WILLIAM LUENENBORG, APPELLANT, v. BERTHA LUENEN-BORG ET AL., APPELLANTS: HENRY LUENENBORG ET AL., AP-PELLEES.

FILED MARCH 29, 1935. No. 29169.

*Fischer, Fischer, Fischer & Fischer* and *De Lamatre & De Lamatre,* for appellants.

*Bryce Crawford, Jr., contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

PAINE, J.

This is a suit for the construction of a will, arising because of errors in the description of the real estate.

At the beginning of the trial a stipulation of facts was entered into, as follows: "It is stipulated by and between the parties hereto that Henry Luenenborg, Sr., is dead, that the heirs are correctly named in the petition; that the testator was the owner of the northwest quarter of section 2, township 14, range 11 in Douglas county, Nebraska, and the same was all of his real estate at the time of his death; that Bertha Luenenborg, defendant, is the testator's widow; that she has elected to take under the statute and not under the will in the probate proceedings in the county court of Douglas county, Nebraska, and is vested with an undivided one-fourth of the real estate in fee simple by virtue of her said election, she being a second wife and not the mother of all the children of the testator; that the will of Henry Luenenborg is correctly set forth in the petition, and is hereby made a part of the record in lieu of the original will."

The evidence discloses that the testator, the owner of the 160 acres of land described above, had lived on this land for about 20 years, although he had owned the property for 30 years. This whole 160-acre tract was farmed

by one of his sons, and rent paid therefor, the father assisting in farming. There were two sets of improvements on the farm. One near the northwest corner, where the father, being the testator, lived, consisted of a house, a barn, a chicken house, and a toilet, which was all fenced in to keep the chickens, horse, and cow off the rest of the farm. The son occupied a complete set of farm buildings, located in the northeast part of the quarter. The testator had been married twice, and there were twelve children by the two marriages.

The deceased having sent word that he was sick and wanted to make his will, an old friend and distant relative, Rudolph Blum, brought out a typewriter and a blank form for a short will, being written on blank No. 76 of the Huffman's General Supply House, and putting this blank in the typewriter he drew up a will, which was duly signed by the testator. All of the discussion between the scrivener and the testator was in the low German language. Certain evident errors were made in writing the will, upon which this appeal is based. Some errors may be due to the fact, as testified by the scrivener, that he is not fluent in the use of the English language. In explaining the drafting of the will, he testified: "I wrote it down as he said it, and afterwards I said, have you got a tax receipt so we can get the description? He said, I don't need any, I will give you the description right out of my mind, and that is the way I put it down, the way he told me."

The second paragraph of the will, being the first which is in dispute, reads as follows in the photostatic copy of the original will as attached to the briefs: "To my wife Bertha Luenenburg, the west ½ of Sec. two township Fourteen and Range Eleven North west Quarter, to have and to hold until her death, then to be divided equally amonst the children." This clause is in controversy for the reason that it gives to the wife the west half of the section, when the testator only owned the northwest quarter thereof. The words "northwest quarter" are inserted out of the place where they should be, and there is a state-

ment in the testimony of the scrivener that that portion of the description would be given toward the last of the sentence in speaking in low German, and that he wrote it down just the way it was given to him. In this opinion it is not necessary to pass on this disputed clause since the widow elected to take under the law rather than under the will, and being the second wife of the testator she is entitled under the law to a fee title to an undivided one-fourth interest therein.

We come now to the clause reading as follows: "To Henry Luenenburg Jr. I bequeath the east ½ of Sec. (2) two (14) Township. Range (II) He is to pay Ten (10) Dollars each year To Mary, Tena, Anna, John, Will, and Frank, Luenenburg, as long as they are alive." This clause gave the trial court, as well as this court, considerable difficulty.

In the stipulation it is set out that the testator owned all of the northwest quarter of section 2, and that he did not own any other real estate. If the widow had not elected to take under the law, we have shown that the fact that the words "northwest quarter" were placed out of their usual order would not have interfered with reaching the conclusion that the testator intended to give the widow the west half of his northwest quarter, and this would leave, as the only land that the testator could have in mind, the east half of that northwest quarter, being all of the land that he owned after giving the widow the west half of the same quarter.

It is one of the rules for construing a will that the intention of the testator, as manifested by the words of the writer, in connection with all the surrounding circumstances, must be carried into effect, provided that in so doing no rule of law is violated. *Worley v. Wimberly,* 99 Neb. 20. It has further been held that it will be presumed that the testator intended to dispose of his entire estate unless the contrary is apparent from the will itself. *Jones v. Hudson,* 93 Neb. 561.

In the case of *Pemberton v. Perrin,* 94 Neb. 718, Ann.

Cas. 1915B, 68, this court had before it a will which described 40 acres of land as lying in range 9, which the testator did not own, and parol evidence disclosed that he did own the identically described 40 acres of land lying in range 10, and it was held that the testator's intention was to devise the land that he owned, and that the mistake of inserting "9" instead of "10." was the mistake of the scrivener who wrote the will. See *Will of Boeck,* 160 Wis. 577, L. R. A. 1915E, 1008; *Seebrock v. Fedawa,* 33 Neb. 413.

In the case at bar, the scrivener says the testator told him that he owned the northwest quarter, and that he wanted the west half to go to his wife and the east half to go to Henry Luenenborg, Jr. It is argued by the appellants that the lower court erred, both in admitting this testimony of the scrivener and in inserting words into an unambiguous clause in the will which were not there, insisting that the trial court apparently attempted to arrive at the supposed intent of the testator, and that parol evidence is not admissible to supply omissions in a will. *Taylor v. Maris,* 90 N. Car. 619.

We have a very recent decision in which this court has rejected testimony of the scrivener showing that the testator intended to insert in a paragraph the name of his wife, and held: "Where a testator, in a clause of his will devising real and personal property, omits the beneficiary either by name or by any other reference, and nowhere in the will is there any means of discovering the identity of the intended beneficiary, parol or extrinsic evidence cannot be received to determine that fact." *In re Estate of Wirsig, ante,* p. 297. However, this decision does not interfere with our holding in this case, for the reason that, considering the language in which the terms of the will were dictated by the testator, and considering all of the paragraphs in the will itself, it is not difficult to find within the four corners of the will that the testator intended to devise all of his property, giving the west half of it to his wife and the east half of it to his oldest son, and the

object and purpose of the court is to carry out and enforce the true intention of the testator as shown by the language of the will itself, and considering the circumstances under which it was made. *Herter v. Herter,* 97 Neb. 260.

In our opinion the trial court committed no error in finding that the will in the instant case passed the east half of the northwest quarter of section 2, township 14, range 11, to the appellee, Henry Luenenborg, Jr.

In the second portion of the paragraph under consideration a provision is made that $10 is to be paid by Henry Luenenborg, Jr., each year to certain named brothers and sisters as long as they live. It was held by the trial court that this provision created no charge against the land bequeathed in this paragraph under the rule of law that lands specifically devised are not liable for the payment of annuities unless they are charged thereon by the will, and that this provision charged Henry Luenenborg, Jr., personally with the payment of said annuities, but were not a charge against the land. In this holding we believe the trial court was right.

In the decree of the district court it is directed that the widow is given homestead rights in simply the five-acre tract of ground in the northwest corner of the northwest quarter of said section 2 upon which the testator and his wife resided at the time of his death. In *Meisner v. Hill,* 92 Neb. 435, it was held that a homestead in Nebraska under section 40-101, Comp. St. 1929, which descends to a surviving spouse, consisting of the dwelling-house and 160 acres of land, and not exceeding in value $2,000, is exempt from judgment liens, and in the last mentioned case it was held that the limitation on the value of $2,000 is solely for the purpose of fixing the rights of creditors, and as no creditors are involved in the case at bar it is insisted by the appellant that the widow is entitled to the homestead rights in the entire 160 acres of land instead of the five-acre tract.

In *Whitford v. Kinzel,* 92 Neb. 373, where the wife owned 80 acres of land, upon which there was a dwelling,

and the husband owned the adjoining 80 acres, the farm being operated as a whole, it was held that, as there were no rights of creditors involved, the whole 160 acres constituted the family homestead.

In the case of *Davis v. Davis*, 112 Neb. 178, it was held that, even though a section line divided two tracts into different subdivisions under the government survey, yet as the tracts were farmed as one farm, they would constitute one homestead.

It is contended by the appellees that the five-acre tract in the northwest corner of this quarter-section of land where testator lived being fenced indicated that he had selected that five-acre tract as his homestead, and that his selection thereof controls the court. On the other hand, it is contended by the appellants that the testator considered the whole northwest quarter as one farm, and operated it as such through renters which he placed thereon. We do not find in the bill of exceptions any evidence to show that it was at any time the intention on the part of the testator to set off this small five-acre tract as his homestead. The renter, Emil Luenenborg, a son of the testator, testified that, while he lived in the old set of improvements on the northeast corner of this 160-acre tract, and had farmed the land as his father's renter, yet his father retained entire control over the land, decided what crops would be planted and just where they would be planted, and also assisted him whenever he was able. He further testified that the small amount of ground fenced off around his father's buildings in the northwest corner of the 160 acres had not always been the same land as fenced in at the time of his father's death, but that this fence had been changed from time to time, according to the convenience of his father, and it was also shown that the hay and grain necessary for the father's horse and cow and chickens were brought directly from the field to his father's barn.

"It is frequently said that occupancy must be exclusive. It is true that a homestead cannot be occupied jointly by two families so that both will have homesteads therein.

Also, it is true that if a tenant in common claims a home-stead, he must occupy the property to the exclusion of his cotenants. But the use of the phrase 'exclusive occupancy' is unfortunate, for it is not true that all of the premises claimed as homestead must be occupied by the claimant and his family. Thus in *Guy v. Downs* (12 Neb. 532), where a barn was leased to others, Judge Cobb declared: 'It is neither within the letter or the spirit of the statute that occupancy of the homestead by the debtor should be exclusive,' and pointed out that if such a requirement was enforced, in order to preserve homestead rights, parts of the premises might have to remain idle and be of benefit to no one. In *Hess v. Eselin* (110 Neb. 590), a claimant occupying one apartment of an apartment house owned by him was held to have a homestead right in the whole house." From article on "Homestead" by Dean H. H. Foster, 3 Neb. Law Bulletin, 130.

In our opinion the testator at the time of his death had a homestead right in and to the entire 160-acre tract, al-though his son, who farmed the same, occupied with his family another set of buildings thereon.

It is, therefore, the opinion of the court that that part of the decree of the trial court limiting the homestead of the widow to the five-acre tract be set aside and held for naught, and it is directed that an order be entered setting aside to the widow a homestead right in the entire north-west quarter of section 2, township 14, range 11 east, in Douglas county, Nebraska, and as thus modified that the decree of the trial court be affirmed.

AFFIRMED AS MODIFIED.