LOUIS H. SCHMIDT, APPELLANT, v. JULIUS O. SCHMIDT, EXECUTOR, APPELLEE.

FILED JULY 8, 1936. No. 29692.

*Mockett & Finkelstein* and *Raymond B. Morrissey,* for appellant.

*Charles A. Dafoe, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and KROGER and IRWIN, District Judges.

KROGER, District Judge.

Ida P. E. Schmidt, a resident of Johnson county, Nebraska, hereinafter referred to as the mother, departed this life testate, in December, 1933. She left surviving six sons, Edward A., Gustav J. R., Hugo J., Alfred W., Julius O., and Louis H. The son Louis, hereinafter referred to as the son, brought an action in the county court of Johnson county, Nebraska, to construe section four of the last will and testament of his mother, and to eliminate a part of said paragraph, on the ground that it had been revoked by implication, and for the further reason that there had been a settlement of the indebtedness mentioned in paragraph four, so that said paragraph was no longer operative as to him. From an adverse ruling by the county court, the son appealed to the district court, and from a judgment of the district court denying the relief prayed for brings the matter to this court for an interpretation of said section four.

The will was executed on November 20, 1931, and paragraphs three and four thereof read as follows:

"Third. I give, bequeath, and devise to my children, Edward A. Schmidt, Gustav J. R. Schmidt, Louis H. Schmidt, Hugo J. Schmidt, Alfred W. Schmidt, and Julius O. Schmidt, all of the residue and remainder of my property, both real and personal, of every nature.

"Fourth. I further provide that in consideration of above bequest and devise that there shall be deducted from each share of each of my said children any money that has been paid out by me for any such child or shall have been ad-

vanced to him by me, or that any child shall owe me at the time of my death, whether said money so owed to me or advanced by me shall be legally collectible, or shall be outlawed.

"At the present time Edward A. Schmidt owes me the sum of Six Hundred and no/100 Dollars; Gustav J. R. Schmidt owes me the sum of Thirteen Hundred Thirty-five and .no/100 Dollars; and Louis H. Schmidt the sum of Twelve Thousand Seventy-three and 4/100 Dollars; and Hugo J. Schmidt owes me on rent on farm occupied by him owned by me, and I am on a security note for him for Eleven Hundred and no/100 Dollars.

"I further provide that in the event that my said son, Louis H. Schmidt, shall pay off the mortgage and all charges that may be against the southeast quarter of section two (2), in township five (5), range eleven (11), east of the Sixth Principal Meridian in Johnson county, State of Nebraska,. and shall pay the above Twelve Thousand Seventy-three and 4/100 Dollars, together with interest at the rate of 5 per cent. per annum on said Twelve Thousand Seventy-three and 4/100 Dollars from this date, then I devise said land so described to the said Louis H. Schmidt."

It appears from the evidence that, in 1919, Louis H. Schmidt purchased the southeast quarter of section two, township five, range eleven, east of the sixth P. M., in Johnson county, Nebraska, and at the time of purchase obtained $13,500 from his mother to apply on the purchase price. To obtain this money, the mother gave a mortgage on lands owned by her. The son secured the $13,500 advanced by the mother by a second mortgage on the land purchased by him, subject to a first mortgage of $10,000 in favor of the Federal Land Bank. In 1924 the Federal Land Bank loan was increased to $15,000, and the mother's second mortgage for $13,500 was subordinated to that. In 1927 the son was adjudged a bankrupt, and in the bankruptcy proceedings the mother filed a secured claim based on the mortgage and notes held by her. In 1929 the mother obtained a deed from the trustee in bankruptcy to the real

estate on which she held the second mortgage, in consideration of the payment of $25 to said trustee, and a short time later the son and his wife executed and delivered to the mother a quitclaim deed to said premises. The son and Anna Schmidt, his wife, remained in possession of said premises as tenants of the mother until the spring of 1932, having agreed to pay a rental of $2,000 a year for said premises. Default having been made in some of the rental payments for the years 1930 and 1931, notice was served upon the tenants in the fall of 1931 to vacate on March 1, 1932. On March 1, 1932, the mother sold the land to John and James Sedlacek for the sum of $16,000, and agreed to deliver possession on March 15, 1932. When the time came to deliver possession, the son and his wife, Anna Schmidt, refused to vacate. At this time they were owing their mother on back rentals approximately $1,100 and a balance of $400 on a note for $500 given to the mother for money borrowed. During this time there were negotiations between the parties looking towards an amicable adjustment of their affairs and under date of March 11, 1932, the mother's attorney wrote a letter to the son's attorneys in which he recited the indebtedness of the son and his wife to the mother on account of past-due rent and the $400 balance due on the note given for money borrowed, and further stated that the mother would cancel "all the obligations to her from Anna Schmidt and Louis H. Schmidt" in return for a note for $250 due in nine months bearing 8 per cent. interest and a note of $400 due in two years bearing 2 per cent. interest. On the evening of March 16, 1932, the son and his wife went to the home of the mother, where there were present, in addition to the parties named, the mother's attorney and another son, and there a further discussion was had and a settlement arrived at, as a result of which the son and his wife executed two notes, one for $250 and one for $400 and received in return the rental notes held by the mother for the years 1930 and 1931 and the $500 note given for money borrowed. Immediately thereafter the son and his wife

vacated the premises theretofore occupied by them and surrendered possession thereof to the mother. In completing the sale of the property to the Sedlaceks, the mother released the mortgage of $13,500 which she held on the land, and the release recites that it was in consideration of the payment of the debt secured.

It is appellant's contention that, notwithstanding the deed from the trustee in bankruptcy and the quitclaim deed from the son and his wife to the mother, the son was the owner of the land at all times and that the mother's only interest therein was that of a mortgagee; that the mother, on March 15, 1932, elected to take the land and cancel the indebtedness and that in the settlement of March 16, 1932, there was a full and complete settlement of all indebtedness of the son and the son's wife to the mother; that the sale to the Sedlaceks and the release of the mother's mortgage by her was an election on her part to so treat the matter and that consequently the provision of the will establishing a charge of $12,073.04 against the son's share of estate was revoked.

As we view the record, the evidence does not sustain appellant's position. The mother acquired title to the land from the trustee in bankruptcy and so far as the record shows never parted with it thereafter until she made the sale to the Sedlaceks. She dealt with appellant and his wife on the basis of landlord and tenant. While it is true that the rent paid by appellant and his wife appears to be greatly in excess of the fair rental value of the premises, the probabilities are that the son felt that, having induced his mother to encumber her own land to the extent of $13,500 in order to assist him, he was in duty bound to pay the interest on that loan in addition to the necessary interest payments on the loan on the land occupied by him. This, no doubt, accounts for the figure agreed upon as rental. As we view the evidence, the settlement of March 16, 1932, had reference only to the delinquent rentals and the balance due on the $500 note representing moneys borrowed, and that neither the mother nor the son considered

the amount due the mother on the $13,500 mortgage as being included or involved in that transaction. Appellant stresses the letter of the mother's attorney written under date of March 11, 1932, in which the words "In short, Mrs. Ida P. E. Schmidt agrees to cancel all the obligations to her from Anna Schmidt and Louis H. Schmidt" were used, and insists that this discloses an intention to cancel the amount due the mother on the mortgage as well as the back rentals and other obligations. That this was not the intention of the mother is supported by the fact that in the same letter the mother's attorney specifically mentions the rent notes and the $500 note for money borrowed, but nowhere makes mention of the $13,500 mortgage, and the further fact that on the evening of March 16, 1932, the mother surrendered to the son the rent notes and note for money borrowed, but did not surrender the notes representing the $13,500 obligation. Nor is there any merit in appellant's contention that by the execution of the release of mortgage the mother acknowledged payment in full of the debt due her. This release was executed for the purpose of relieving the land from the lien of the mortgage and to give the purchaser a title free from the same and there is nothing in that transaction that is inconsistent with the provision in the will that the balance due the mother on that mortgage be deducted from the son's share.

To place the construction which appellant now contends for on the acts of the parties would be to impute to the mother an intention to give the appellant a preference over his other brothers and relieve him from repaying any of the advancements made to him by his mother, yet at the same time require the other brothers to repay the advancements which had been made to them, notwithstanding the fact that the advancements to appellant were greatly in excess of all other advancements combined. Such an intention on the part of the mother is inconsistent with her expressed desire that all of her children should be treated alike.

This court has repeatedly held that in construing a will

the object and purpose of the court is to carry out and enforce the true intentions of the testator as shown by the will itself, and in light of the circumstances under which it was made. *Luenenborg v. Luenenborg,* 128 Neb. 624, 259 N. W. 649; *Worley v. Wimberly,* 99 Neb. 20, 154 N. W. 849.

Applying that test to the will before us, we find that it was the mother's intention that all of her children be equal participants in her bounty and that any advancements made by her to any of her children should be deducted from their share, and that there was no such change in the plan adopted by testatrix as would defeat her purpose and imply an intention on her part to revoke a portion of her will.

It follows that the judgment of the district court was right and the same is

AFFIRMED.