IN RE ESTATE OF V. L. DIMMITT.
CLARK B. EVANS, APPELLEE, V. LURA BONEY ET AL.,
APPELLANTS.
3 N. W. (2d) 752

FILED MAY 8, 1942.   No. 31261.

*J. D. Cronin* and *Moodie & Burke,* for appellants.

*Zacek & Nicholson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an appeal by contestants from an order of the district court admitting to probate, as the will of the decedent, two written instruments, one a will and the other a warranty deed which the court found was incorporated into and made a part of the will by reference.

Petition was filed in the district court for Cuming county on June 8, 1939, alleging that V. L. Dimmitt, resident for many years of Cuming county, died March 4, 1939, leaving a last will and testament; that by the sixth paragraph of said will he made a part thereof a certain deed, made by testator and wife to Alta J. Pullman, conveying to her a quarter-section of land in Cuming county; that said deed was made by testator long prior to the execution of his will; that said instruments are on file in the county court for Cuming county, and have been admitted to probate therein, and the same are offered for probate in the district court.

On May 6, 1940, an amended answer was filed by the contestant, to wit, Lura Boney, a sister of deceased, and Beulah M. Priest, Lillian L. McKeone and LeRoy Dimmitt, children of a deceased brother of deceased, and Pearl Cary, who is a son of Mary R. Cary, who was a sister of testator and who died subsequent to his death, and subsequent to the docketing in court of the appeal, and as such heirs at law all contestants are interested in the estate of V. L. Dimmitt, deceased. In the fifth paragraph they object to the probate of the purported deed described in the petition, alleging that it was not executed and delivered as required by law, and that the same is invalid and ineffectual to pass title to the property therein described. It is alleged in paragraphs 6 and 7 that the purported deed of conveyance offered for probate was not executed and witnessed in the manner provided by law for the execution of wills, and does not constitute a

testamentary disposition of the real estate therein described, and that paragraph 6 of said will does not evidence any intention of testator to incorporate said deed, or any other document, into or as a part of said will.

Contestants pray that the purported deed offered for probate as a part of the last will and testament of V. L. Dimmitt, deceased, may be disallowed and denied probate, and that it be decreed not to be incorporated into or made a part of the last will and testament of said deceased.

Proponent filed reply on said May 6, 1940, denying each and all of the allegations contained in the fifth and sixth paragraphs of the amended answer.

On May 7, 1940, a jury was waived, and the cause was tried to the court and was taken under advisement. Thereafter, on July 11, 1940, judgment was entered by the court, finding that said deed was duly executed by the testator, that it was not executed with the formalities required of testamentary instruments, that at the time of its execution it was not intended to be such an instrument, and standing by itself it cannot be given effect as an instrument of that nature; that at the time of the execution of the last will and testament the testator intended to, and did by reference, incorporate into and make said deed a part of said instrument, and said instruments together constitute the last will and testament of the deceased, and should be admitted to probate as such; wherefore, it is considered, ordered and adjudged that both of the instruments, being the same instruments admitted to probate by the county court for Cuming county, be admitted to probate in the district court as together constituting the last will and testament of the deceased.

Objection is made to each and all of the findings of the court, and each is alleged to be an error sufficient for reversal.

There is practically no dispute about the following facts as shown by the evidence. V. L. Dimmitt, the testator, died March 4, 1939, at the age of 78 years, having resided about 50 years on his 320-acre farm northwest of Wisner in Cum-

ing county. His wife predeceased him about two years. Their only child died in infancy, and testator left no issue. His heirs at law were two sisters, Lura Boney and Mary R. Cary, of Red Oak, Iowa; two nephews, Aldos D. Brouhard and Avan L. Brouhard, of Ames, Iowa, who were sons of Jennie Brouhard, a deceased sister; and two nieces and a nephew, Beulah M. Priest and Lillian L. McKeone, of Omaha, Nebraska, and LeRoy Dimmitt, of Papillion, Nebraska, daughters and son of Elmer Dimmitt, a deceased brother.

Alta J. Pullman was a niece of the testator's wife, and was born in Mills county, Iowa, and lived with her parents until she was three years old. The testator and his wife had only one child, a daughter who died in infancy, and so they urged the parents of Alta J. Pullman to let her live with them, which they did, and at three years of age she was taken into their home in Iowa. When she was five years of age they removed to Nebraska, and as soon as they were settled they took her to their new home, and she lived with them continuously until she was married in 1907, at the age of 27 years. After her marriage she visited them in Nebraska two or three times a year, and they repeatedly visited her in her Iowa home. On November 30, 1936, before his wife's death, which occurred in 1937, testator and his wife executed a deed to the home quarter to Alta J. Pullman. This deed was sealed in an envelope and placed by testator in his safety deposit box in the First National Bank at Wisner, where it remained until his death. It is undisputed that the deed was never delivered, and never left testator's possession and control in his lifetime. Four or five months prior to the testator's death, Mrs. Pullman was notified that he was ill, and she went out to his home. She, together with Mr. and Mrs. Tucker, took him to a hospital at Wayne. As they commenced their journey, the testator said to her: "I am pretty sick and you know that. I may not come back and if I don't come back here is the key and you can have this place. Your aunt and I have always said that; and it is in the will."

Mrs. Pullman testified: "I have the key in my possession in my pocketbook. Q. He handed you the key at that time?

A. Yes, sir.   Q. That was the key to the dwelling-house oc-
cupied by him located on the southeast quarter of section
8-24-4 in Cuming county?   A. That is right.   Q. Then what
did you do; drive out on the road?   A. Yes; we started to
Wayne.   Q. Did something else happen on the road?   A. We
started to go and he said to Mr. Tucker—'Drive a little
slow.'  And when we got to what he said was the division of
the farms—   Q. Just tell what you mean, where was this
place you stopped?   A. Where the tenant lives.   Q. That is
between the quarters Mr. Dimmitt owned?   A. Yes, sir.
Q. All right, go on."   Objection overruled.   "A. He says to
me 'This is the section line between the places'—the line
where the two quarters join in other words.  'You see Mr.
Dinklage's fence here'—   Q. That was across the road?   A.
That was across the road.  I said 'Yes,' and he said 'Here is
your line.  Follow that.  You may have to put in your half
of the fence and that will be eighty rods possibly.  I don't
think you will have any trouble with them.'  He told me that
was the lawful thing, and how many feet the posts were
apart.  He said 'You don't need but two wires to make a
lawful fence here.'  That is what he told me.  I didn't know
and I don't know today."

Lon Tucker, who is a farmer living northwest of Wisner,
was a friend of the testator for more than 40 years.   They
had visited each other's homes hundreds of times, and he said
that he had taken the deceased on a great many trips; in fact,
for the last 15 or 20 years he took the deceased on practically
every trip that he made.  He said he had hauled him thous-
ands of miles, and the two families were very close friends.
He saw Mrs. Pullman around the place from the time she
was a girl until she got married and moved to Iowa.  After
that he had taken Mr. and Mrs. Dimmitt to visit her in Iowa
many times, some years three or four times during the year,
and Mrs. Pullman came to visit the Dimmitts, and continued
to come to visit Mr. Dimmitt after Mrs. Dimmitt died, just
the same as she had before.  He said that when they were
sick he would go up and take care of the Dimmitts.

Mr. Tucker testified that Mr. Dimmitt always thought

well of Mrs. Pullman "and I could not see any other way;" that the deceased told him many times of his intentions toward her, and Mr. Dimmitt told him that his feelings were just the same as any man's feelings would be toward his own child; that conversations in regard to these matters were over a period of 20 years; that some time prior to his death he took Mr. Dimmitt to the hospital at Wayne; that he had been quite sick and that none of his relatives were there except Mrs. Pullman and her daughter, and that he had quite a good deal of difficulty in persuading Mr. Dimmitt to go to the hospital at Wayne, some 14 miles away; that he was not addicted to taking advice, and was a rather stubborn sort of person; that he and his wife and Mrs. Pullman went to the hospital with him. "We got him ready and got out on the porch and he locked the door and he handed the key to Mrs. Pullman. 'Now,' he said, 'you know that this old home is yours. If anything happens to me and I don't get back here' he says, 'This old home is yours.' He says, 'Now, you know where the line of this place is, know all about it here.' And then we started and we got down to where the line was there— Q. Did he give her anything? A. He gave her the key. Q. At that time? A. Yes. He handed her the key. Q. This key to the house in which he lived, was it? A. Yes, sir. And when we got to the north line of the quarter he stopped on the road and showed her as near as he could where the line was, and he says, 'Now, there will probably have to be a fence through there between you and the boys' quarter.' "

The will, exhibit A, was dated December 31, 1937, and was properly executed. The first paragraph related to debts and funeral expenses. In the second paragraph, the northeast quarter of section 8-24-4 in Cuming county was given to the two nephews, Aldos D. Brouhard and Avan L. Brouhard. The third paragraph gave $200 to the East Liberty Cemetery Association in Mills county, Iowa. The fourth paragraph gave all of testator's telephone stock to Lucille Genevieve Schultz. The fifth and sixth paragraphs read as follows:

"Fifth: All the rest and residue of my personal property

I order and direct that my executor hereinafter named divide the same according to private instructions I have given him.

"Sixth: I have already deeded to my niece, Alta J. Pullman, the southeast quarter (SE¼) of section eight (8), township twenty-four (24), north, range four (4), east of the 6th P. M. in Cuming county, Nebraska, and for that reason I do not devise any real estate to her in this Will."

The seventh paragraph appointed Clark B. Evans executor, and he is the appellee and proponent of the will.

The proponent contends that by the sixth paragraph the deed was incorporated into and made a part of the will. The contestants deny that the deed was ever delivered.

The deed, exhibit C, is a warranty deed, on a regular printed blank, filled in on a typewriter, and dated and acknowledged November 30, 1936, before Clark B. Evans, notary public, and is signed by the testator and his wife, and conveys the southeast quarter of section 8-24-4, Cuming county, to Alta J. Pullman, "for and in consideration of the sum of One Dollar ($1.00), Services performed over a period of years, and Love and Affection."

The deed was never recorded, but bears on the back, among other indorsements, these words: "Admitted to Probate and filed for record April 19-1939 as a part of the Last Will and Testament of V. L. Dimmitt. Homer A. McDonald Co. Judge."

Clark B. Evans testified that he lived in Wisner, Nebraska, and had been acquainted with the testator for about 50 years; that he drove out to see Mr. Dimmitt when called, and when he received the necessary instructions he drove back to town and prepared the warranty deed, and took it back to their farm, about seven or eight miles out, and they signed and executed the deed. Mr. Evans testified that he took the deed back to town, placed it in an envelope, and gave it to Mr. Dimmitt the next time he came to town, and he never saw it again until the will was read.

Neil D. Saville, cashier of the First National Bank of Wisner for 13 years, was well acquainted with the testator, who

was a customer of the bank. He testified that Mr. Dimmitt did not have a safety deposit box, but had a box of his own, in which he kept his papers, and that he left his box in the bank simply for safe-keeping. He said the box was not locked, and on the order of the county judge he opened the box and forwarded the sealed envelope containing the deed to the county judge.

The contestants present, as the sole question, whether the deed was incorporated into and made a part of the will by the language of paragraph 6 thereof. It is insisted that the language contained no disposable words; it is not a devise, and the intent statute of Nebraska (Comp. St. 1929, sec. 76-109) is powerless to change that statement; that a mere recital in a will that testator has previously deeded realty, which recital proves to be erroneous because of the nondelivery of the deed in the testator's lifetime, does not disclose an intention to incorporate such undelivered deed, and does not operate as a devise of the realty.

In support of this proposition, they cite *Noble v. Tipton,* 219 Ill. 182, 76 N. E. 151, 3 L. R. A. n. s. 645, *Allenbach v. Ridenour,* 51 Nev. 437, 279 Pac. 32, and *Witham v. Witham,* 156 Or. 59, 66 Pac. (2d) 281, 110 A. L. R. 253, but in each of these cases there appear to be circumstances which are not found in the case at bar.

The cardinal rule of testamentary construction is to ascertain the intention of the testator as expressed in his will, and to give it effect, unless the testator attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy. See *Dahmer v. Wensler,* 350 Ill. 23, 182 N. E. 799, 94 A. L. R. 1.

"The object and purpose of the court is to carry out and enforce the true intention of the testator as shown by the will itself, and considering the circumstances under which it was made." *Luenenborg v. Luenenborg,* 128 Neb. 624, 259 N. W. 649.

"If possible without violating well-settled rules of law, effect must be given to every word in a will." *Schnitter v. McManaman,* 85 Neb. 337, 123 N. W. 299.

The statement of Judge Sullivan in *Weller v. Noffsinger*, 57 Neb. 455, 77 N. W. 1075, has often been quoted by this court, and is as follows: "No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

In an article published in 1899 in 12 Harvard Law Review, 417, Justice Holmes discussed the interpretation of wills, and said: "It is true the testator is a despot, within limits, over his property, but he is required by statute to express his commands in writing, and that means that his words must be sufficient for the purpose when taken in the sense in which they would be used by the normal speaker of English under his circumstances."

In this case we are faced with the question: Under what conditions may an extrinsic document be incorporated into the will, and admitted to probate with the will?

The first essential requisite in such cases is that the instrument must be in existence, which is admitted in this case. The next requisite is that it must be referred to in the will in a manner which will clearly identify the instrument. There can be no question in the case at bar as to the deed being the one referred to in the will.

The argument, therefore, seems to rest on the point: Can the words of the will be construed to be, or to imply, an intention on the part of the testator to incorporate this particular deed into and make it a part of his will? See 68 C. J. 640; *Bottrell v. Spengler*, 343 Ill. 476, 175 N. E. 781.

It is the general rule that parol evidence of the testator's declarations is not admissible, yet the better view limits this rule to cases in which there is no possible ambiguity. But declarations of the testator may be admissible, not to show

direct expressions of his intention, but to show the facts and circumstances surrounding the situation under which he executed the will.

Reference is made in several text-books and in many opinions to the early English case of *Allen v. Maddock,* 11 Moore's P. C. Cases, 427, 25 Eng. Ruling Cases, 439. In this case the testatrix on December 1, 1851, drew up in her own handwriting a paper described as the "last will and testament of me, Anne Foote, of Bath, which I make and publish for all my worldly substance." In this she gave several legacies and appointed executors, but this instrument was attested by only one witness, and was therefore invalid. On September 13, 1856, the day before her death, she executed a "codicil to my last will and testament," which was on a separate sheet of paper, and properly executed as a will. The codicil was apparently executed to give her faithful servant, Eliza Baker, the sum of 100 pounds and certain furniture, but appointed no executor, and made no other reference to the will. Under these circumstances the two papers were admitted to probate, and an appeal was taken.

In the opinion itself it refers to Wigram's "Extrinsic Evidence in Aid of the Interpretation of Wills," and approves the summing up by the author in the following words: "Every claimant under a will has a right to require that a Court of construction, in the execution of its office, shall—by means of extrinsic evidence—place itself in the situation of the testator, the meaning of whose language it is called upon to declare. It follows that—with the light which that situation alone affords—the testator's meaning can be determined by a Court; the Court which so determines does, in effect, declare that the testator has expressed his intention with certainty, or, in other words, that his will is free from ambiguity."

It is said in the opinion that the question was one of fact which obviously must be explained, and can only be explained by parol evidence; that there is no ambiguity whatever in the expression by which the reference is made, but parol evidence must necessarily be received to prove whether

there is or is not in existence at the testator's death any such instrument as is referred to by the codicil. The holding of the court follows: "An unattested, or imperfectly attested paper may be incorporated in a will by reference, if the terms of the will, assisted (if necessary) by the surrounding circumstances, are sufficient to identify the paper, and to show the intention of giving effect to it."

In *Loring v. Sumner*, 23 Pick. (Mass.) 98, a case was decided at the October term, 1839, in which the testator said in his will: "I have given to my son $1,000 by note, for his full part of my estate." This note was invalid as having no consideration, but it was held that on the whole the testator by his will had manifested an intention or determination that such amount should be paid out of his estate to his son, and therefore the court could see no good reason why the determination manifested in the will should not be carried into execution.

In *Newton v. Seaman's Friend Society*, 130 Mass. 91, 39 Am. Rep. 433, the testator directed that legacies should be paid according to the directions which had been written in a book by another and signed by him, and the book was finally admitted to probate, and the legacies were paid in accordance therewith, and it was held that a paper referred to in a will and containing directions for the disposition of the estate, but not executed nor witnessed as a will, *should be admitted to probate as a part of the will*, if it was in existence at the date of the will, and is clearly identified.

Of the many Nebraska cases on wills, we believe that one of them throws light on the question before us. It is *In re Estate of Hopper*, 90 Neb. 622, 134 N. W. 237, which came up from Douglas county. William Hopper, a widower, had nine children. He had his will prepared, and at the same time seven warranty deeds. In his will he made a specific bequest to a daughter and to one of his sons. The will recited that he had executed conveyances by warranty deed to seven of his children of land of approximately equal value, and directed that upon his death the executors should deliver the deeds to the seven grantees, and that the land so deeded to them should be held by them in fee simple thereafter.

Judge Sedgwick, in writing the opinion, held that oral evidence was admissible to prove the circumstances surrounding the execution of the instrument. It was further held that a writing in existence at the time of executing a will, and made at the same time and as a part of the same transaction, may by reference be made a part of the will. It was argued that the deeds were not made in compliance with the statute in relation to the execution of wills, and, never having been delivered to the grantees in the lifetime of the grantor, were ineffectual to pass title. But it was held that the deeds and the will taken together were intended and executed by the deceased as his will. It was held:

"A writing in existence at the time of executing a will, or made at the same time and as part of the same transaction, may, by reference, be made a part of the will, if it is described and fully identified by the terms of the will itself.

"Oral evidence is competent to prove the signatures of witnesses who signed such writing referred to in the will and made a part thereof, and to prove that the writing offered is the same instrument so identified by the signatures of such witnesses."

In this *Hopper* case, deeds were given effect, because by placing them away with the will the testator by this act, and by his reference in the will, intended to incorporate them into his will, and the deeds thereby had a testamentary effect. In the *Hopper* case the testator said: "I have made and executed conveyances by warranty deed." In the case at bar the testator said, "I have already deeded to my niece, Alta J. Pullman," and by the sixth paragraph of the will in the case at bar he gives her the last piece of his land, and in the seventh and last paragraph he appoints the executor. Aside from all extrinsic evidence, the language of that will discloses an intention on his part that Mrs. Pullman is to receive the home quarter-section as a part of his testamentary scheme.

One must give the language used in a will the significance intended by the testator. The will is not his autobiography; it states facts very briefly. When a man makes his will he is

testamentarily inclined, and what he has in mind is to be proved so that his scheme for the distribution of all his property works out. Certainly the testator in that sixth paragraph had in mind that he was disposing of the last piece of his property, for when a man makes a will there is a presumption that he does not intend to leave his property intestate. The primary purpose is to give intention to all that the testator said, and when that is done, and we get at his intention, then the courts are to carry that out.

Merritt Schultz was a witness for the contestants. He said his father and Mrs. Dimmitt were cousins. He visited the testator in the hospital at Wayne, and testator told him he had *willed* the southeast quarter to Alta J. Pullman.

It is clear in this case that the testator and his wife had several years before decided to give to Alta J. Pullman the old home place, where she had been raised to womanhood, and in carrying that out a warranty deed was drawn up and executed by the grantors, but, not knowing how long either of them might live, no delivery was made of the deed. Very shortly after the death of the wife the husband made this will, in which he states clearly that they have already deeded to the niece this property, and having deeded it to her he does not devise her additional property in his will. Is this court justified in saying that the deed and will together do not show the intention of the testator, and that, because the will says he does not devise her any real estate in the will itself, therefore the little girl whom they took into their home, because she was about the age of their deceased daughter, and raised to womanhood, shall be entirely disinherited by the will and the deed, and this fine property shall go to relatives, with some of whom the testator had very little to do, and one of whom, Lon Tucker, who witnessed the will, said he had never heard mentioned by the testator in their many years of close acquaintance? Such a disposition of this home place would be a tragedy, and would defeat the very purpose of the deceased husband and wife in their desire to leave their best piece of property to the one who had loved them and whom they had loved.

By this disposition no conjecture is resorted to, no speculation is indulged in, but the sacred right of a testator to give his property to the only one he intended to have it is carried out by this court.

In conclusion, it appears to the court that the testator intended to dispose of all of his property by his will. Is it natural to suppose he would leave out the most valuable tract of land? This deed to his niece, Alta J. Pullman, was never delivered, but was kept off the record by the testator, for he intended to hold the title to that home place until he died. If he had intended that deed to be effective at the time he put it in his safety deposit box, he need not have mentioned it in his will at all. Therefore, at the time of its execution it was not intended to convey title, and standing by itself it cannot be given effect as a deed; however, at the time of the execution of the will the testator intended that the two instruments should be admitted to probate and convey title to his most valuable piece of property to the one to whom he had handed the key to the house when he locked the door when he left for the hospital, and said, in brief, I am pretty sick, I may not come back; if I don't, here is the key, and you can have this place; your aunt and I have always said that, and it is in the will.

Therefore, at his death his will conveyed a good title to his niece of the property described in the deed. It is an accepted rule that the will always speaks from the date of testator's death, and speaks conclusively as of that particular date.

Because of the reasons set forth in this discussion of the facts and the law, the decision of the district court is hereby

AFFIRMED.

YEAGER, J., dissenting.

I respectfully dissent from the majority opinion in this case. It appears to me that the adoption of this opinion has the effect of destroying existing and fundamentally sound rules for interpretation and enforcement of testamentary dispositions of estates.

The testator, V. L. Dimmitt, died March 4, 1939. On No-

vember 30, 1936, he executed a deed to Alta J. Pullman to the southeast quarter (SE¼) of section eight (8), township twenty-four (24) north, range four (4) east of the 6th P. M. in Cuming county, Nebraska. His wife joined in the deed. The deed was placed in a box in the First National Bank of Wisner, Nebraska, where it remained until after the death of Dimmitt. Mrs. Dimmitt died in 1937, and thereafter on December 31, 1937, Dimmitt made a will, the sixth paragraph of which is as follows:

"Sixth: I have already deeded to my niece, Alta J. Pullman, the southeast quarter (SE¼) of section eight (8), township twenty-four (24), north, range four (4), east of the 6th P. M. in Cuming county, Nebraska, and for that reason I do not devise any real estate to her in this will."

The deed was admitted to probate in the county court as a part of the testamentary disposition of the estate of V. L. Dimmitt. Appeal was taken to the district court where the action of the county court was sustained. The majority opinion affirms the decision of the district court.

The majority opinion holds that this paragraph of the will was sufficient as a devise of the real estate described to Alta J. Pullman.

In our consideration of this matter we must not lose sight of the fact that the question of whether or not this was sufficient as a devise is the sole and only question for determination in this case. We must not become confused by the discussion regarding delivery of the deed to the real estate, and the key to the house. The point of such discussion bears only on the question of whether or not there was passage of title under the deed, which is not an issue triable in this case.

Coming back then to the real issue presented, on the clear and specific language employed by the testator, can it be said that he intended a devise of the real estate to Alta J. Pullman? The will itself supplies the unequivocal answer. The testator said in language so plain and simple that it is not subject to construction, but only to acceptance, that he did not so intend. He said: "I do not devise any real estate to her in this will." The fact that he intended to convey to her

real estate by deed, and that what he did in that connection was sufficient or insufficient to effect a conveyance, is beside the point and of no consequence here. Words could not have been selected to express the testamentary intention more clearly than those used. There was no ambiguity, latent or patent.

This court has said: "In the construction of a will, the court is required to give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law." *Martens v. Sachs,* 138 Neb. 678, 294 N. W. 426; *In re Estate of Pfost,* 139 Neb. 784, 298 N. W. 739.

Again it is stated: "Parol evidence is inadmissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity therein which makes his intent obscure or uncertain." *Lincoln Nat. Bank & Trust Co. v. Grainger,* 129 Neb. 451, 262 N. W. 11; *Martens v. Sachs, supra; In re Estate of Pfost, supra.*

The case of *In re Estate of Hopper,* 90 Neb. 622, 134 N. W. 237, cited and commented upon in the majority opinion, is clearly not in point in the present situation. There, simultaneously with the making of the will, the testator executed seven warranty deeds. The deeds were admitted to probate. There by specific declaration in the will the testator made the deeds a part of the testamentary disposition. In the case at bar, by equally specific declaration, the testator removed the deed from his testamentary disposition.

The case of *Noble v. Tipton,* 219 Ill. 182, 76 N. E. 151, closely parallels this one. A father deeded his home farm to his son Thomas, and ten months later made a will in which he disposed of all his property by will except the home farm. In the will he said that he had deeded the farm to his son, Thomas Noble. He delivered the deed to the cashier of a bank where it was held subject to the order of the grantor. The court held that the deed operated neither as a conveyance nor a devise. Of like effect is *Allenbach v. Ridenour,* 51 Nev. 437, 279 Pac. 32.

The testator clearly had no intention of giving Alta J.

Pullman anything by will and, in my opinion, this court has established a dangerous precedent in declaring the existence of a testamentary intent which is specifically negatived by the language of the will which is clear and plain.

SIMMONS, C. J., and CARTER, J. concur in the dissent.