WAYNE T. CARROLL AND THOMAS L. CARROLL, TRUSTEES UNDER THE TESTAMENTARY TRUST CREATED UNDER THE WILL OF THOMAS L. CARROLL, DECEASED, APPELLANTS, V. HASTINGS COLLEGE, A CORPORATION, ET AL., APPELLEES.

108 N. W. 2d 223

Filed March 24, 1961. No. 34893.

*Spier, Ellick & Spire,* for appellants.

*Harry F. Russell, Morsman, Maxwell, Fike & Sawtell,* and *William S. Padley,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

SPENCER, J.

This is an action by Wayne T. Carroll and Thomas L. Carroll, two of three testamentary trustees, to construe the will of Thomas L. Carroll. The question involved is whether a majority of the trustees have the authority to use both income and corpus of the trust to increase the specific amounts payable to the beneficiaries of the trust.

The trial court in substance construed the will to permit the trustees to increase the specific amounts paid to the beneficiaries so long as the income would permit such increase. It further held that the corpus of the trust could only be used if the income was insufficient to pay the specific amounts payable. Wayne T.

Carroll and Thomas L. Carroll, hereinafter referred to as trustees, appealed.

The third trustee, The United States National Bank of Omaha, was named as defendant. It likewise asked the court to construe the will. The other defendants herein are the Presbyterian Church of Gothenburg, Nebraska, hereinafter referred to as church; Hastings College; and the other beneficiaries of the will. The church answered in substance that all it desired was a continuance of its specific annual payment. Hastings College, hereinafter referred to as appellee, filed an answer and a cross-petition. The other defendants filed voluntary appearances but no pleadings.

The present controversy revolves around a construction of paragraph (6) of the will, but to properly understand said paragraph the following portions of the will are set out:

"(4) I give all the remainder of my property, after payment of my debts, funeral charges, and expenses of administration, to Peters Trust Company, of Omaha, Nebraska, Wayne T. Carroll, of Gothenburg, Nebraska, and Harvey M. Johnsen, of Omaha, Nebraska, in trust, for the following purposes:

"(a) To pay to the present Presbyterian Church of Gothenburg, Nebraska, until the termination of this trust as hereinafter provided for, the sum of five hundred ($500.00) dollars annually, for use in the maintenance and upkeep of the property of the church.

"(b) To pay to my wife, Nellie E. Carroll, until her death, the sum of six thousand ($6,000.00) dollars annually.

"(c) To pay to each of my sons, Dorr H. Carroll, Leslie R. Carroll, Leigh C. Carroll, and Wayne T. Carroll, until the death of my wife, or until such son's death, if previously occurring, the sum of one thousand ($1,000.00) dollars annually, subject to the conditions and limitations of paragraph 4 (i) hereof.

"(d) To pay to each of my sons who survive my wife,

after her death and for the remainder of such son's life, the sum of one thousand ($1,000.00) dollars annually, subject to the conditions and limitations of paragraph 4 (i) hereof.

"(e)   To pay to the present wife of each of my sons, after her husband's death, if she survives him, during such part of the remainder of her life as she shall remain a widow, the sum of five hundred ($500.00) dollars annually, subject to the conditions and limitations of paragraph 4 (i) hereof. * * *

"(g)   To pay to each of my grandchildren living at the time of my death, after such grandchild attains the age of twenty-five years and for the remainder of his or her life, the sum of five hundred ($500.00) dollars annually, subject to the conditions and limitations of paragraphs 4 (h) and 4 (i) hereof. * * *

"(i)   If any of my sons shall be indebted to me at the time of my death, all the payments provided for in paragraphs 4 (c) to 4 (h) inclusive hereof, shall be applied toward the satisfaction of such indebtedness until such time as it is paid, and neither my said son, nor his wife, nor any of his children shall have the right to claim or receive the benefit of any payments herein provided for until such indebtedness shall have been paid in full with accumulating interest.

"(j)   To terminate the trust herein created and all of its obligations, upon the death of the last surviving of my grandchildren living at the time of my death, and, after converting the remaining assets, if any, into cash to turn over such money unconditionally and in absolute ownership to the Presbyterian College, at Hastings, Nebraska, commonly known as Hastings College.

"(5)   The interests created in the foregoing trust are intended solely for the personal support of the respective beneficiaries, and no part of the income therefrom shall be alienable or subject to the claim of any creditor of the beneficiaries.

"(6)   If it shall appear to the trustees at any time

that such of my estate as remains on hand will be insufficient to pay the incomes provided for, during the period intended, in their full amount, a majority of the trustees shall have the power to make such pro-rata reduction in the amount of the incomes as they may deem necessary in order to conserve and continue the trust. Similarly, if, by reason of the death of some of the beneficiaries, or for other reason, the amount of the incomes shall appear to the trustees to be capable of being increased, a majority of the trustees shall have the power to make such pro-rata increase, — my intention being that the respective beneficiaries (except the Presbyterian Church of Gothenburg, Nebraska, to whose bequest the power of modification shall not apply), shall receive the maximum amount of income possible from my estate, consistent only with the continuance of the trust until the death of the last surviving of my grandchildren as provided for in paragraph 4 (h)."

Wayne T. Carroll, son of the deceased and one of the trustee appellants, made a settlement with the trust estate under paragraph (4) (i) and has completely waived any further interest as a beneficiary. Other than the church and the appellee, the beneficiaries are the widow of a deceased son of the testator and six grandchildren of the deceased, all of whom are over 25 years of age.

The following principles are applicable herein: "The cardinal rule of testamentary construction is to ascertain the intention of the testator as expressed in his will, and to give it effect, unless the testator attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy." In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704.

"The intention of a testator is to be ascertained from a liberal interpretation and comprehensive view of all the provisions of a will." Wall v. Wall, 157 Neb. 360, 59 N. W. 2d 398.

"In searching for the intention of the testator the

court must examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used." Abbott v. Continental Nat. Bank, 169 Neb. 147, 98 N. W. 2d 804.

It is apparent that there is no latent ambiguity involved nor is such contention made by the parties. Appellee, however, objected to the testimony of an actuarial witness as an attempt to present oral testimony to explain provisions of the will. We do not so understand the evidence, and find no error in its admission. It was not introduced to explain any provision of the will, but rather to show the feasibility of appellants' construction. We have many times held that: " 'Parol evidence is inadmissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity therein which makes his intent obscure or uncertain.' " In re Estate of Pfost, 139 Neb. 784, 298 N. W. 739.

Appellee contends that no construction is justified which would liquidate the corpus of the trust during the lifetime of the beneficiaries other than appellee and the church. It further contends that: "a construction of the will must show that the testator had in mind a maximum sum of $500.00 equally for the education, maintenance and support of such of his grandchildren as should qualify under the trust. There is no logical or lawful interpretation that the testator had any intention of any higher annual sum being paid to any such grandchildren than the sum of $500.00."

In reviewing the will, we observe that the original payments were in such an amount that it would appear there can be no question but that the testator intended the use of the corpus to pay the specified amounts. Otherwise, there would not have been enough to pay the beneficiaries for the first year. This is also the inference to be drawn from the authority given the trustees in paragraph (6) to make pro rata reductions if necessary

to continue the trust. Our problem is the construction of the following language: "Similarly, if, by reason of the death of some of the beneficiaries, or for other reason, the amount of the incomes shall appear to the trustees to be capable of being increased, a majority of the trustees shall have the power to make such pro-rata increase,—my intention being that the respective beneficiaries (except the Presbyterian Church of Gothenburg, Nebraska, to whose bequest the power of modification shall not apply), shall receive the maximum amount of income possible from my estate, consistent only with the continuance of the trust until the death of the last surviving of my grandchildren as provided for in paragraph 4 (h)."

It is to be noted that in paragraph (6), testator, previous to the use of the words "maximum amount of income" in the last sentence of the paragraph, three times used the word "incomes." From the context, "incomes provided for," it is evident that testator was using the word "incomes" as synonymous with payments. Appellants insist it would be inconsistent with the rest of paragraph (6) to hold the word "income" in the last sentence to mean investment or earned income only, as contended by appellee. The rule we believe applicable is as follows: "In the interpretation of language used in a will, where a word or words are used in a definite and clearly stated sense, and again used in the same paragraph, it is presumed to be meant in the same sense unless there is a clear indication to the contrary." Dennis v. Omaha National Bank, 153 Neb. 865, 46 N. W. 2d 606, 27 A. L. R. 2d 674. Is there a clear indication to the contrary? We find none.

The word "income" appears in paragraph (5). Certainly appellee's definition is not applicable. It is apparent that testator is using the word at that point to describe the annual payment to the beneficiary.

Contrary to appellee's contention, we find nothing in the will indicating a limitation of payments only from

income. We do not think the will can be so construed. We hold that the intention of the testator is to be ascertained from the whole will and from a consideration of all its provisions, not merely from isolated clauses, sentences, or words.

We feel there is some significance to the language in paragraph (4) (j): "To terminate the trust herein created and all of its obligations, upon the death of the last surviving of my grandchildren living at the time of my death, and, after converting the remaining estate, *if any,* * * *." (Italics supplied.) This provision would indicate that testator contemplated that the corpus might be depleted at the termination of the trust. The words "if any" appear to bear out this construction.

We also note in paragraph (6) the restriction on the power of modification upward of the bequest to the church and the words "shall receive the maximum amount of income possible from my estate, *consistent only* with the continuance of the trust * * *." (Italics supplied.) It would seem that testator's intention was that the $500 would be paid to the church until the death of the last grandchild, and that during that period the other living beneficiaries would receive at least $500, but more if the trustees thought it possible. The discretion was vested with the trustees.

It seems apparent to this court that testator's primary and paramount concern was to provide for his family and his church and not the appellee. He limited the amount the church could receive but not his family. We are convinced that testator did not intend that the corpus of the trust should be preserved in toto for appellee. We believe rather that the testator, in order to accomplish his purpose of providing for his beneficiaries to the death of his last grandchild, realized a sizeable part of the corpus must of necessity remain, and this he intended should go to appellee.

It is our conclusion that the testator intended the payments to beneficiaries other than the church to be based

on the condition of the trust estate as distinguished from the income. It is obvious he contemplated a decreasing trust estate which he was anxious should provide at least the minimum payment. He gave his trustees an area of discretion as to the amount of payments, but charged them to conserve and continue the trust itself until the death of the last grandchild.

Under this interpretation, the trustees are authorized to pay any and all funds to beneficiaries except such as are needed to carry out the purpose of the trust to the date of termination, the date of the death of the last grandchild who was living at the death of the testator. In this respect, however, the trustees must provide ample margins of safety so that at least the specific amount can be paid to all beneficiaries until the termination of the trust.

For the reasons above given, we reverse the judgment of the trial court and remand the cause with directions to enter a judgment construing the will in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

WENKE, J., not participating.