IN RE ESTATE OF DAVID CARR, DECEASED.
ALLEN CARR, APPELLANT, V. CLEO F. CARR, APPELLEE.

112 N. W. 2d 786

Filed January 19, 1962. No. 35064.

*James R. McGreevy* and *Gross, Welch, Vinardi, Kauff-man, Schatz & MacKenzie,* for appellant.

*George W. Haessler,* for appellee.

Heard before CARTER, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is a suit in equity for the construction of the will of David Carr, deceased.

The evidence shows that David Carr died testate on September 18, 1927, leaving surviving his wife, Lulu Carr, and two sons, Darrel and Allen, ages 23 and 16 years, respectively. The pertinent part of the will provided: "I hereby give divise (sic) and bequeath unto my beloved wife Lulu Carr all my property both real and personal for and during her natural life; at her death, the remainder in said real estate shall vest in my children Darrel Carr and Allen Carr as follows: To Darrel Carr the North Half of the S. W. ¼ of Section Thirteen, Township Thirteen, Range Nine, Saunders County, Nebraska, upon this condition that said land is not to be sold until he reaches the age of thirty years; To Allen Carr the South Half of the S. W. ¼ of Section Thirteen, Township Thirteen, Range Nine, Saunders County, Nebraska, upon the condition that the land be not sold until he reaches the age of thirty years. Should either die without lawful issue, then and in that case the survivor shall have his share."

The evidence shows that Darrel Carr died testate on May 17, 1950. By the terms of his will, he devised and bequeathed his entire estate to his wife Cleo F. Carr. No children were born to Darrel and Cleo F. Carr. Lulu Carr, the widow of David Carr, deceased, died on May 2, 1960. It is the contention of Allen Carr that he is now the owner of the north half of the Southwest Quarter of Section Thirteen, as described in the will. Cleo F. Carr, the widow of Darrel Carr, contends that she is the owner of said real estate. The trial court found for Cleo F. Carr, and Allen Carr has appealed.

The primary and controlling issue is whether the words "Should either die without lawful issue, then and in that case the survivor shall have his share," mean should either die prior to the death of testator or prior to the death of the life tenant. The quoted section of the will provided for a life estate in testator's widow and "at her death, the remainder in said real estate shall vest in my children * * *." It is contended by plaintiff

that these words evidence an intent to vest the remainder interest at the death of the life tenant and not at the death of testator. In Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713, this court in dealing with this subject stated: "We recognize that the provisions of the will defer the right to and beneficial use of the property and that the same is not to be divided until the death of the widow who has a life use thereof. This does not necessarily mean that the two estates shall not vest at the same time or that the remainder shall not vest until the death of the wife. The policy of the law is to favor the early vesting of estates and we construe the language used to refer to the time when the possession and enjoyment of the estate in remainder shall begin rather than to the date of vesting."

The policy of the law favors the early vesting of estates. Such policy also favors the absolute vesting of an estate at the earliest possible time. Except where a testator evidences an intent to vest an interest at a different time, the vesting occurs upon the death of the testator in accordance with the foregoing rules. But where the intent of the testator to vest at a different time is ascertainable from the will, the intent of the testator will be given effect. Consequently when a will provides for a life estate, and at the death of the life tenant the remainder to vest in his children, the remainder interest vests in the children on the death of the life tenant unless there be evidence of a contrary intent within the four corners of the will.

In determining the intention of the testator, the court will examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and assume that the testator understood the meaning of the words used. Carroll v. Hastings College, 172 Neb. 20, 108 N. W. 2d 223. It is clear, therefore, that the words "at her (life tenant's) death, the remainder in said real estate shall vest in my children," standing alone, mean that the remainder in-

terest shall vest on the death of the life tenant, and that the interest of the designated remaindermen at the death of the testator was contingent.

The intervener, Cleo F. Carr, relied primarily on Davis v. Davis, 107 Neb. 70, 185 N. W. 442; Schuyler v. Hanna, 31 Neb. 307, 47 N. W. 932, 11 L. R. A. 321; and Moore v. Lyons, 25 Wend. 119 (N. Y.), cited with approval in Schuyler v. Hanna, *supra*. We think these cases are distinguishable. In the Davis case the will provided for a life estate to testator's wife, and at her death his property was to be divided equally between his four children. Testator then provided if one or more of his children should die without heirs, his property was to descend in equal shares to his surviving children. A son died childless after the death of the testator and before the death of the life tenant. The court held that the remainder vested at the death of the testator, the court saying: "He did not say that the estate in remainder shall be divided among his children at his wife's death, but he did say that his 'property' shall then be thus divided. Such a division of the 'property' cannot be made at an earlier date or before the termination of the life estate. * * * The expression, 'die without heirs,' should be construed to refer to the death of a devisee during the life of testator. The policy of the law is to favor the early vesting of estates. The inference of a vested remainder is stronger than the inference of a contingent remainder, if the meaning of testator is obscure." The will provided for a division of the property upon the death of the life tenant, a result that would obtain if he had devised the remainder to his children without words of explanation. There were no words used in the will indicating a vesting of the remainder at any time other than the death of testator.

In the Schuyler case a wife's statutory life estate in a homestead was involved. There was no will. This court held that the remainder vested on the death of the

husband. The applicable statute was construed to mean that the life estate in the homestead and the remainder interest vested at the same time on the death of the husband. The case is not in point in the present case.

In Moore v. Lyons, *supra,* there was a devise of real estate, to A for life, and after his death to three others, or the survivors or survivor of them. The court held that under such a devise, the remainder vested at the death of the testator. In commenting on the case this court in the Schuyler case said: "Survivorship is referred to the period of the death of the testator where there is no intent manifest to the contrary so as to cut off the heirs of the remainderman * * *."

In the instant case the testator stated in plain language that the remainder was to vest on the death of the life tenant. We find nothing within the four corners of the will to indicate an intent to vest the remainder at any other time. Giving the words "at her death, the remainder in said real estate shall vest in my children" their usual and accepted meaning, the remainder interest did not vest absolutely until the death of the life tenant. In Goodrich v. Bonham, 142 Neb. 489, 6 N. W. 2d 788, this court had before it a provision of a will which stated "Upon the death of said daughter, title to said lot * * * shall vest in fee simple in my son, Leonard W. Goodrich." We held that the remainder vested on the death of the testator because of other provisions of the will indicating a contrary intent. The court said: "To accept the plaintiffs' construction of the will we must conclude that the testator contemplated and intended that, in the event of the son's death prior to the daughter, the remainder estate in the city lot should pass as an intestate property, and that he contemplated that contingency but did not provide for it. The care with which the will was drawn, the provision for all contingencies that the will contains, and the evident desire of the testator to vest title to all his estate in the son, subject

to specific bequests and devises to other beneficiaries, all negative any such construction as that for which plaintiffs contend. The contrary is clearly indicated by every provision of the will. It is clear from this analysis of the will as a whole that the testator intended to create a life estate in trust for his daughter, and a remainder in fee simple to the son in the lot in question. * * * Tested by these rules it is clear that the life estate vested in the trustee, and the remainder estate vested in Leonard W. Goodrich, as an individual at the instant of the death of the testator." This case points up the rule. The intent of the testator was gathered from the whole will which contained provisions necessitating a finding that a vesting upon the death of the daughter, the life tenant, was not the real intention of the testator. The will before us contains no such provisions indicating any intent other than that to be drawn from the plain language used.

The words "should either die without lawful issue" refer to the time of the vesting of the remainder. Consequently the death of Darrel Carr without lawful issue prior to the death of the life tenant requires a holding that the real estate in question should descend to the survivor Allen Carr. Such a disposition is not violative of any rule of law. In Ingraham v. Ingraham, 145 Neb. 330, 16 N. W. 2d 445, this court said: "The creation by will of a vested interest in real estate defeasible upon the occurrence of an expressed contingency is not legally objectionable and is valid and enforcible." See, also, Wilkins v. Rowan, 107 Neb. 180, 185 N. W. 437. The contingency occurring in the present case, resulting in a defeasance, was the death of Darrel Carr without lawful issue prior to the death of the life tenant.

For the reasons stated, the judgment of the district court is reversed and the cause remanded with directions to enter a decree quieting the title to the north half of the southwest quarter of Section Thirteen, Township

Thirteen North, Range Nine East, Saunders County, Nebraska, in the plaintiff, Allen Carr.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., and MESSMORE, J., participating on briefs.