EMMA WARREN ALLEBACH, APPELLANT, V. CITY OF FRIEND, APPELLEE.

FILED JULY 16, 1929. No. 26682.

*John J. Ledwith* and *G. E. Price,* for appellant.

*F. L. Bollen, contra.*

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and CHASE and REDICK, District Judges.

CHASE, District Judge.

This is an action brought by the sole residuary legatee and devisee under the will of Norman E. Warren, deceased, to declare a reverter of a certain devise and bequest to the city of Friend, Nebraska. The cause was tried to the court without a jury, and the trial court found against the plaintiff and ordered the action dismissed. This controversy arose under the provisions of paragraph 11 of the will of the deceased.

It appears from the record that Norman E. Warren died testate, a resident of Saline county, Nebraska; that plaintiff is a niece of the deceased and sole residuary legatee and devisee under his will. His will was admitted to pro-

bate May 24, 1920. The paragraph of the will under which this contention of the parties arises is as follows:

"Eleventh. I give and bequeath to the City of Friend, the sum of ten-thousand dollars to be used for the erection of a hospital, to be built on the northwest corner lots belonging to my home place, located on the corner of Fourth and Spring street, also give and bequeath the said lots to the city. I give this money and lots to the city with the understanding that said hospital be called the 'Warren Memorial Hospital' and lettered to that effect over the front entrance to the building. I give this as a memorial to the Warren family and I request that said hospital be built as near up to date as possible, also built as near fireproof as possible, and I request that the city have charge and control of said hospital at all times and that the charges to patients patronizing said hospital be as reasonable as possible, to be managed in a way that it will be just self-sustaining. I would not want the city to use it as a money-making proposition as I would like to have all the people that cared to, to use and get the benefit of said hospital."

It is alleged in plaintiff's petition, and not directly denied, that the executor of said will paid over to the defendant on January 16, 1922, the sum of $10,000, less inheritance taxes, which was received by the defendant. The defendant also received and possessed itself of the real estate described in the above paragraph on the same day; that the actual net sum of money received by the defendant under this paragraph of the will was $9,466.06. This money was placed in a separate fund by the defendant, designated as the "Hospital fund;" that no part of the fund has ever been used except for hospital purposes. The plaintiff's contention is that the fund has at all times been adequate to erect a building and hospital, and that the defendant has had possession of the property above set forth since the 16th of January, 1922; that the failure to consummate the purpose of the gift during this period amounts

to a forfeiture thereof, and such property, because of such forfeiture, falls within the residuary clause of the will and passes to the plaintiff. The petition alleges further that the defendant has diverted and is attempting to divert said funds and apply the same to a different purpose than that pointed out in the will. We find no evidence to substantiate this allegation. In truth, the contrary appears to be the fact, that there has been no diversion of the fund nor any misappropriation thereof for any other purposes except toward the erection and construction of a hospital, so that a forfeiture, based upon a misappropriation of the fund or a misapplication thereof to some other and different purpose than that mentioned in the will, is entirely out of the case. Therefore, the sole question for this court to determine is whether or not a forfeiture arises because of the delay on the part of the donee to erect and equip a hospital out of the particular fund bequeathed. This action was commenced on March 26, 1926, so that a little more than four years had elapsed between the receipt of the gift and the commencement of the action.

Plaintiff argues strenuously that the case of *Marble v. City of Tecumseh,* 103 Neb. 625, is decisive of the question involved here. We have carefully considered that case and reach the conclusion that it is easily distinguishable from the instant case. In that case this court held the failure to perform the condition defeats the donee's title. The city of Tecumseh had already sold and conveyed the lots devised and had expended the funds toward the improvement of different real estate than that set forth in the will of the deceased. It will be noted in that case that the devise of certain lots to the city of Tecumseh was for the purpose of creating a park out of the real estate devised, and in addition to the devise the testatrix bequeathed the sum of $500 to be used in the improvement of the same. It appears that the city submitted to the people for their vote the question of whether or not they should improve this particular tract of land as a park or sell it and use the pro-

ceeds to improve some other tract, and at a city election the people voted to sell the particular lots devised, whereupon the city sold the lots devised and used the proceeds thereof and also the money bequest to purchase and improve other property. Upon such facts as this the court rightfully held that the will created an estate upon a condition subsequent, namely, that the lots and money be used for the purpose expressed in the will. From the opinion in that case we quote the following:

"From this language it is plain that the intent of the testatrix was that the identical lots described in her will, and not some other property that might be purchased from the proceeds of a sale thereof, should be 'known as Brandon Park.' The identical property so described, not some other tract, was 'always to be used as a public park.' It was her express intent that the $500 gift was to be used to improve the same; namely, the identical lots described in the will."

It is therefore apparent that the controlling fact in the mind of the court was that the city of Tecumseh had refused to accept the gift and misappropriated the funds.

In the instant case the fund has not been misappropriated nor the property sold, but the city still has the real estate and the money intact for the purpose of carrying out the testator's express directions in his will.

The plaintiff cites *Green v. Old People's Home,* 269 Ill. 134. In that case the gifts were made to existing institutions to use in carrying on the purposes of their charity. The will provided by its own terms that, in case any donee should fail or cease to carry out the objects of its origin, then the bequest should be void. The facts showed that more than 21 years had elapsed since the funds were received and no part thereof had been devoted to the purpose of the gift. The court held in that case that the donee had had a reasonable time to carry out the purposes of the gift, and having failed to do so within that period, such failure constituted a forfeiture. It will be noted by the provision of the will that under certain conditions the be-

quests became void. We find no such language in the present will.

By the terms of the will the testator created a charitable trust. Such trusts, from time immemorial, have been considered special favorites of equity.

The following definition of a charity is found in an early and very celebrated English case, *Morice v. Bishop of Durham*, 9 Ves. Jr. (Eng.) 399:

"'Charity,' in its widest sense, denotes all the good affections men ought to bear towards each other; and in that sense embraces what is generally understood by benevolence, philanthropy, and good will. In its more restricted sense it means merely relief or alms to the poor."

And in *Webster v. Sughrow*, 69 N. H. 380, 48 L. R. A. 100, the court said:

"A 'charity,' in the legal sense, may be defined as a gift to be applied, consistently with existing law, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show it is charitable in its nature."

Bequests to hospitals are considered by the courts generally as gifts to charity:

"The term 'charitable bequest' includes a bequest for the establishment of an orphan asylum, and a hospital for sick and infirm persons." *Attorney General v. Moore's Ex'rs*, 19 N. J. Eq. 503.

It appears from the whole record that the donee of this gift has been making an earnest effort to erect and equip a hospital as near in accordance with the terms of the gift as possible; that it has received some funds and is endeavoring to receive additional funds to be added to the be-

quest so that it can construct a suitable hospital commodious enough to satisfy the needs of the community. It will be noted that the testator gives to the city of Friend the sum of $10,000, "to be used for the erection of a hospital." It is a well-established doctrine that courts will endeavor to give effect to the intent of the testator wherever possible, consistent with established principles of law. It is apparent to us, from the plain import of the language used by the testator, that he did not intend that the donee must construct and equip this hospital solely from the funds mentioned in the bequest. The fact that he uses these words, "to be used for the erection of a hospital," indicates to us that he meant by this expression that this fund was to be used as far as it would go toward the erection of a hospital, which would mean that the donee was not restricted entirely to the use of this fund alone, but would be authorized to receive donations from others, or raise additional money from any lawful means to assist in the establishment of the hospital, especially when we consider the fact that the amount donated by the testator is probably inadequate to erect and equip a hospital of the kind and character that he desired.

"Legacies and devises to the uses of charity are entitled to peculiar favor and are regarded as privileged testaments, and will not be declared void if they can by any possibility, consistent with law, be considered as good. So courts of equity go to the length of their judicial power rather than that such a trust should fail. They are construed so as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form and manner pointed out by him cannot be followed." 5 R. C. L. 352, sec. 89.

In the brief of appellant the word "forfeiture" is used. With respect to this contention it will be noted that courts take the opposite view with respect to forfeitures that it does concerning charities. Forfeitures are in no sense favorites of the law, and courts are hesitant to divest persons

of title to property unless the person whose property is sought to be divested is guilty of some unlawful or wanton misconduct, or such inexcusable delay that the injury resulting therefrom would be greater to others than the divesting of the title would be to the guilty party. The conduct of the person who seeks to invoke this drastic remedy is viewed with a high degree of judicial suspicion and the rule is never applied unless the facts upon which it is based clearly show a right thereto.

"Forfeitures are odious in law and are not favored by the courts, and will not be enforced unless the facts which purport to require such drastic action come clearly and plainly within the provisions of the law or of the contract, as the case may be." *Meyer v. Supreme Lodge, K. of P.,* 104 Neb. 505, cited in *Donnelly v. Sovereign Camp, W. O. W.* 111 Neb. 499.

It is contended on the part of the defendant that the doctrine of *cy pres* applies. This doctrine is translated to mean "as near as may be." We will not devote time nor space to the discussion of the origin of this rule, which is as interesting as it is historic. It is a rule of construction and is generally held applicable where a literal compliance with the bequest becomes impossible through some unavoidable contingency to which the party seeking to carry out the legacy has made no contribution. This rule recognizes that a substantial compliance, carrying into effect the intention of the testator as far as possible, will be sufficient. It is a rule of construction and a wholesome doctrine of equity. It grows out of the principle of sound reason, that the donor could not and did not intend to require the donee to perform impossibilities, and that he only intended that the directions connected with the bequest be substantially executed, and when this is accomplished the condition is satisfied, though not literally fulfilled. This doctrine is usually applied by the American courts where the institution or object of the charity ceases to exist, in which case courts have permitted the bequest to be received

for the purpose of carrying out other charities, in many instances of a different kind or character than the one contemplated by the donor.

We do not conceive it to be necessary in the instant case to apply this doctrine, because the charity sought to be carried out on the part of the donee of the gift is the identical charity mentioned by the donor. The record shows that the city of Friend received this fund and has placed it at interest, and at the time of the trial of this case in the lower court the fund amounted to $11,762.97; that on April 13, 1928, the mayor and council passed a resolution, which is a part of this record, appointing a committee to employ an architect to prepare plans and specifications providing for the construction of the hospital. Several thousand dollars of donations have subsequently been received by the city to add to this fund for the purpose of erecting the hospital of sufficient size to meet the needs of the city and to make the institution, so far as possible, self-supporting. From an interpretation of the provisions of the will the city of Friend does not do violence to the terms thereof by receiving additional funds, neither does the record show that the city has been guilty of any undue or unwarranted delay in connection with the erection of this hospital sufficient to warrant the court in declaring a forfeiture or reverter of the gift.

In *Marble v. City of Tecumseh, supra,* wherein this court construed a will with a provision very similar to this will, the court held that that will created a condition subsequent, and that the city of Tecumseh, by its refusal to accept the gift and by the sale of the property and the diversion of the fund, breached the condition. Upon any reasonable theory of construction it must be said that the estate of the donee in the *res* of this gift is one upon condition; this condition making it incumbent upon the donee to carry out as near as practicable, within a reasonable time, the express directions of the will. It will be noted that the donee is a municipal corporation, a political subdivision of the state

of Nebraska, and the end of its existence cannot be safely asserted or even foreseen. In this respect the gift is unlike one to an individual whose existence under the ordinary processes of physical dissolution must end in a period certain. For a court to hold that the donee of this gift, which is likely to exist indefinitely, could retain the funds and the property, without obligation to carry it out, would do violence to every rule of proprietary interest known to the law, and would also be holding that no condition was attached to the gift. This provision of the will amounts to a condition subsequent, by the breach of which the right of reentry exists to the donor or his heirs, in which case there must appear some recusant action on the part of the donee concerning this gift amounting to a refusal to accept, or such negligent or protracted delay in carrying out the testator's request to such an unwarranted extent as would amount to a refusal. Neither of these elements are present.

Life presents no example more praiseworthy than that in which a person, actuated through compassion for afflicted humanity, at a time when he observes the sands running low in the hour-glass of life, makes provision by will in an apparent endeavor to effect some equitable balance of the inequalities of the world, by providing a means through which the distress and suffering of the poor and needy will be alleviated. Such motives spring from the virtue of human sympathy, which is considered by all codes of ethics as among the noblest attributes of the human soul. The testator, miniature in stature, and to whom nature had been quite unkind by visiting upon him a physical deformity, was probably, because of his own condition, moved to this most munificent act of charity. It is quite reasonable to suppose that in making this gift he had in mind some friend or acquaintance whom he desired to become the object of his beneficence. This being the case, it would do violence to his intention for the defendant to delay such a laudable enterprise until the living generation might pass from the scenes of life. It is as much a part of his intention to carry

out the trust with reasonable punctuality as it is to comply with the express conditions thereof as to manner and form.

The city of Friend should take steps with as much dispatch as practicable under present conditions to complete this hospital provided for in the will. The testator whose property formed the nucleus of the fund out of which a hospital is to be built should have the terms of his will carried out with as much strictness as is possible, and when the hospital is constructed it should be located on the identical lots devised. The first funds expended for this purpose should be from those received under the bequest; the name of the hospital should be "Warren Memorial Hospital;" and a tablet should be placed over the front entrance of the building bearing such inscription as directed by the will. The directions as to the kind and character of the building should control as far as can be; and the fees and charges to patients should be arranged as near as possible as contemplated by the will, so that the institution will only be self-sustaining, and not an object of profit on the part of the city.

From the facts disclosed by this record, we do not feel justified in holding that the elements necessary to a breach of condition subsequent exist. Neither do we intend to hold that the defendant can delay the carrying into effect of this provision of the will for an unreasonable length of time.

For reasons herein stated, we are of the opinion that the trial court correctly disposed of the issues, and the judgment is therefore

AFFIRMED.

Note—See Charities 11 C. J. 349 n. 95; 350 n. 7; 38 A. L. R. 44; 5 R. C. L. 363; R. C. L. Perm. Supp. 1367.