ELMER H. HAVENS, ET ALS, TRUSTEES
vs.
MILTON M. KLEIN, ET ALS.

Superior Court          Fairfield County          File #48461

Present:  Hon. ERNEST A. INGLIS, Judge.

Marsh, Stoddard & Day,          Attorneys for the Plaintiff.

Pullman & Comley,
John T. Cullinan,
Earl Smith,          Attorneys for the Defendant.

### MEMORANDUM FILED OCTOBER 22, 1935.

INGLIS, J. This is an action brought by the Trustees under Article Twenty-fourth of the will of Jacob B. Klein seeking the advice of the Court as to three questions which have arisen as to the construction to be placed on that will. By the terms of the will the residue of the testator's estate (supplemented by the residue of the estate of his wife) is left to ten trustees with directions that they use not to exceed one-sixth of the fund for the purchase of a site, one-sixth of the fund for the endowment and the remaining four-sixths for the erection and equipping of an auditorium for the cultural benefit of the people of Bridgeport to be known as the Klein Memorial Auditorium.

The first question is as to whether the trustees are empowered to expend less than $500,000 for the construction and equipment of the auditorium.

This question arises by reason of the provisions of Article Twenty-fifth of the will which are in substance that if the trustees shall determine "that after deducting the said one-sixth for said site and the additional one-sixth" for endowment "the balance remaining will not equal at least $500,00,

even with the residue under the will of my beloved wife—then I direct my said trustees to invest and reinvest said principal trust fund—until said fund shall equal said amount of $500,-000. or such amount as the trustees shall determine in the exercise of their reasonable discretion is necessary in order to erect a suitable Auditorium with suitable equipment and upon a suitable site—but in no event shall said period of accumulation exceed fifteen years."

The only reasonable interpretation of this clause is that the testator intended that the trustees should expend not less than $500,000 for the construction and equipment of the building, at least if the building is constructed at any time short of the expiration of the fifteen-year period referred to. The reasonable discretion referred to is the discretion to continue the accumulation for a long enough period so that the fund will amount to such sum over and above $500,000 as the trustees may decide is necessary to provide a suitable building. The question as to what may be done by the trustees in this regard after the expiration of the fifteen-year period in the event that the fund is not then adequate to provide $500,000 for the construction and equipment of the building is not now passed upon. The trustees are advised that, at least until it becomes apparent that the accumulation to the fund within the fifteen-year period will not be adequate to provide $500,000 they may not expend less than $500,000 for the construction and equipment of the building.

The second question propounded is as to whether the trustees are authorized to accept financial assistance of the Federal Emergency Administration of Public Works by means of a plan worked out between them and the City of Bridgeport and between the City of Bridgeport and that Federal Agency.

It appears that the funds now in the hands of the trustees amounts to $617,000. The trustees are of the opinion that about $125,000 should be paid for a site and $125,000 set aside as endowment to comply with the spirit of Article Twenty-fifth of the will and they find that it will take about $500,000 to erect a suitable building. The Federal Agency is willing to make a grant of not to exceed $223,020 to make up the deficit. The Federal Agency, however, is permitted to deal only with a state or municipality. Accordingly it is planned that the trustees enter into a contract with the City of Bridgeport wherein it is agreed that the trustees will pur-

chase a site and deed it to the City. The City will by ordi-nance create a Klein Auditorium Commission to supervise the erection and equipment of an auditorium on that site, the trustees being appointed as the members of that com-mission. After the City shall have entered into the contract for the building the trustees will pay over to the City such proportion of the contract price as $276,980 bears to $500,000 plus the excess of the contract over $500,000, and it is con-templated that the Federal Agency will pay over to the City in accordance with the former's regulations such proportion of the contract price as $223,020 bears to $500,000. It is further provided that if the Federal Agency fails to advance its proportion in time to make payments to the contractors the trustees shall make advancements of such sums as are necessary to take care of those payments. The trustees fur-ther agree to save the City harmless from loss or expense in excess of the sum actually received from the Federal Agency.

In determining whether the trustees should enter into the proposed arrangement it must be recognized at once that the case is not one in which the doctrine of approximation can be applied. That doctrine applies only where it is imprac-ticable to accomplish the charitable purpose of the donor of a trust by following out the method specified by him.

Zollman, Charities, page 106.

Shannon vs. Eno, 120 Conn., 77, 87.

Lockland vs. Walker, 151 No. 210; 52 s. w. 414.

In the present case it is not only possible to accomplish the testator's purpose to provide an auditorium by following out the method of accumulating the income to the principal for not more than fifteen years but it is probable that the result will be accomplished in that way.

The only question, therefore, is whether under the will as it now stands it appears that it was the intention of the testator that the fund might be made up to the requisite amount either by accumulating the income or by the method now proposed. The will does not expressly give the power to the trustees to accept additions to the fund from outside sources. The testator apparently from various phrases in the will expected that probably the fund left by him and his wife would not be adequate at the beginning of the trust. If, therefore, he had intended that the fund might be sup-

plemented by donations from others, it would have been easy for him to have inserted a provision to that effect. He of course could not have anticipated that a Federal Agency would come into being to donate the necessary funds but he might well have envisaged the possibility of some individual being willing to make such a donation. And the mere fact that he did specify a method whereby the fund could be increased to an adequate amount and failed to provide that it might also be increased by donations from third parties at least raises a presumption that he considered the latter method and discarded it. The presumption is, therefore, that he did not intend that the fund should be augmented by donations or grants from any one outside of himself and his wife.

The present proposal, moreover, if accepted, would run counter to and be in conflict with the general scheme of the testators in at least three particulars.

In the first place it would disturb the proportion specified by him for the use of the fund for the site, for the building and for the endowment respectively. The testator has been very careful to provide for a division of the fund among those three purposes. It seems to be of the very essence of his plan that not more than one-sixth of the fund shall be used for site and at least one-sixth of the fund for endowment. It is clearly his idea that the amount of the endowment should vary with the cost of the building and should bear by way of minimum an exact proportion to it. As the proposal has been worked out it is intended to set aside $125,000 for endowment and $590,000 for the building. To carry out the ratio fixed by the will for a building costing $590,000 the endowment should be at least $142,500. It might be possible by cutting down the cost of the building to increase the endowment to the point where it would equal the proportion of the building cost prescribed by the will but the result could not be arrived at by the simple method devised by the testator particularly so long as the grant from the Federal Agency is restricted by its terms to be used for the building alone. The complications in figuring which would be entailed in arriving at a conclusion which would substantially comply with the requirements of the will in this regard are such that it is highly improbable that the testator intended that the trust should be so involved by the addition of such a grant.

In the second place, the testator by the terms of his will places the responsibility for deciding all of the many troublesome questions which arise in the construction of such an Auditorium upon his trustees. In order to obtain the grant from the Federal Agency they must delegate the power to make those decisions to a commission appointed by the City. It is true that the contract with the City provides that the individuals who are the trustees under the will shall be appointed to the commission. As the commission, however, they owe their allegiance to the City and not to the estate of the testator. The building would no longer be built under the direction of the trustees under the will. It would be built under the direction of the City of Bridgeport. Moreover, by accepting the grant the trustees bind themselves to let building contracts in accordance with the Federal Agency's regulations. That is, for instance, the contracts must provide that the contractor shall pay certain minimum wages and work his men not more than certain maximum hours. The testator clearly intended that his trustees should be free at the time of letting contracts to let contracts to whomever they saw fit and on such terms as they saw fit. Again in order to obtain this grant the trustees have to commit all of the funds in their hands to the City to save it harmless if the Federal Agency should fail to make good its grant. If the Federal Agency failed to carry through the terms of its grant it is quite conceivable that the trustees might find themselves with an auditorium half finished and no funds left. This of course is not likely but it serves as an illustration of the fact that by entering into the proposed contract the trustees are placing out of their control the erection of the building in certain vital particulars. It is so clearly a part of the testator's scheme that the trustees shall be untrammeled in their control of the erection of the building that he can hardly be presumed to have intended that they should have the power to bind themselves to a delegation of that control and to commit themselves in advance to decisions which except for that commitment they might not later desire to make.

In the third place it is an essential part of the testator's scheme to provide a memorial for himself and wife. The present proposal contemplates that considerably more than one-fourth of the total cost of the site, building and endowment shall come from a source other than the testator. It

is of course true that the building still will bear the name "Klein Memorial Auditorium" and there will be no permanent indication thereon that the P. W. A. contributed to it. It, however, is bound to be remembered that the building was not exclusively the gift of Mr. and Mrs. Klein. It will be remembered that the P. W. A. contributed to the erection of the building. Under such circumstances the building could not be a memorial to the Klein family exclusively and at least in some measure the testator's purpose would be frustrated. Here again ,therefore, it is difficult to read into the will the intention to authorize the trustees to enter into an arrangement that would accomplish such an end.

The will now before us differs from the will construed in the case of **Allemadh vs. City of Friend, 226 N. W. 440 (Neb.)** cited by the plaintiffs in that it directs that if the fund is not adequate for the complete construction and endowment of the auditorium the income shall be accumulated until it is adequate. This indicates not "that the fund was to be used as far as it would go" as the court in the **Allenbach** case said of a bequest of $10,000 to be used for the erection of a hospital, but that the whole auditorium was to be paid for out the fund.

Although the testator in Article Twenty-eighth speaks of the Auditorium as being in his thoughts "one of the most needed public agencies in our City" he does not anywhere indicate that he thinks the need is immediate, pressing or urgent. He is creating a charity to endure forever and a memorial to himself and wife to endure forever and reading the will as a whole it would seem to be his intent that the building of the auditorium should wait if necessary for fifteen years rather than have his charity and memorial diluted by the injection of outside funds.

On the whole, therefore, the will does not justify a construction which would permit the trustees to obtain or accept the financial assistance of the Federal Emergency Administration of Public Works by entering into the contract with the City of Bridgeport referred to in the complaint.

The third question propounded is as to whether Edmund S. Wolfe is now a properly qualified trustee. The answer to that question depends on the answer to the broader question as to whether those trustees who are appointed not by name but by designation of the office which they hap-

pened to hold when the trust went into effect remain as trustees after they cease to hold their office or whether the trusteeship runs with the office.

It is to be noted that some of the ten trustees are appointed by name. In the event that two of these cease to act the will provides that no successors shall be appointed. As to the other two the will provides a method for appointing their successors. As regards the six trustees who are appointed not by name but by designation of the offices which they hold there is no direction as to how their respective successors shall be appointed. The original appointments, however, is of the men holding those offices at the time the trust becomes effective "and their successors". It is clearly the intent of the will, therefore, that those trustees shall hold their trusteeships purely by virtue of their offices respectively and as each one ceases to hold his office, he, by that fact, ceases to act as trustee and his successor in office becomes his successor as trustee. The trusteeship runs with the office. Inasmuch as Edmund S. Wolfe ceased to be Chairman of the Board of Directors of The First National Bank and Trust Company of Bridgeport on August, 1935, he then ceased to be a trustee under the will in question.

Judgment may enter advising the trustees on the questions which have arisen as indicated in this memorandum.