Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/11/2021 08:10 AM CDT

In re Estate of Nelda M. Akerson, deceased.
Ronald E. Akerson, Personal Representative of
the Estate of Nelda M. Akerson, deceased,
appellee, v. Hamilton County, Nebraska,
and Hamilton Manor Board of Trustees,
appellants, and State of Nebraska,
intervenor-appellee.

___ N.W.2d ___

Filed June 11, 2021.    No. S-20-668.

1. **Decedents' Estates: Appeal and Error.** In the absence of an equity
   question, an appellate court, reviewing probate matters, examines for
   error appearing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   appearing on the record, the inquiry is whether the decision conforms
   to the law, is supported by competent evidence, and is neither arbitrary,
   capricious, nor unreasonable.
3. **Wills: Trusts.** The interpretation of the words in a will or a trust pre-
   sents a question of law.
4. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing
   questions of law in a probate matter, an appellate court reaches a conclu-
   sion independent of the determination reached by the court below.
5. **Decedents' Estates: Appeal and Error.** The probate court's factual
   findings have the effect of a verdict and will not be set aside unless
   clearly erroneous.
6. **Wills: Intent.** The cardinal rule in construing a will is to ascertain and
   effectuate the testator's intent if such intent is not contrary to the law.
7. ____: ____. To arrive at a testator's or testatrix's intention expressed in
   a will, a court must examine the will in its entirety, consider and liber-
   ally interpret every provision in the will, employ the generally accepted
   literal and grammatical meanings of words used in the will, and assume
   that the maker of the will understood words stated in the will.

8. **Wills: Charities.** Courts will view with favor donations by will for charitable purposes, and will endeavor to carry them into effect, where the same can be done consistently with the rules of law.
9. **Decedents' Estates: Real Estate: Title.** In Nebraska, title to both real and personal property passes immediately upon death to the decedent's devisees or heirs, subject to administration, allowances, and a surviving spouse's elective share.
10. **Wills: Death.** The provisions of a will take effect and become operative at the time of the death of the testator, unless the will expressly provides for vesting at a later time.
11. ____: ____. A will always speaks from the date of the testator's death, because the testator could always modify the distributions prior to his or her death.
12. **Wills: Interest: Time: Intent.** Neb. Rev. Stat. § 30-24,102 (Reissue 2016) provides that general pecuniary devises bear interest at the legal rate beginning 1 year after the first appointment of a personal representative until payment, unless a contrary intent is indicated by the will.
13. **Wills: Interest.** A will is an instrument in writing. Therefore, when interest is required to be paid on a pecuniary devise pursuant to Neb. Rev. Stat. § 30-24,102 (Reissue 2016), the legal rate of interest called for is 12 percent per annum, as required by Neb. Rev. Stat. § 45-104 (Reissue 2010).

Appeal from the County Court for Hamilton County: FRANK J. SKORUPA, Judge. Reversed and remanded with directions.

Andre R. Barry, Jennie A. Kuehner, and John F. Zimmer, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Daniel E. Klaus and Timothy F. Clare, of Rembolt Ludtke, L.L.P., for appellee.

Douglas J. Peterson, Attorney General, and Shereece Dendy-Sanders for intervenor-appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, and FREUDENBERG, JJ.

FUNKE, J.

The probate court found that an $875,000 charitable bequest to a nursing home facility lapsed, and the court ordered the

funds to be distributed to the residuary of the estate. Because we conclude that the bequest did not lapse, we reverse, and remand with direction.

## BACKGROUND

Nelda M. Akerson was a lifelong resident of Hamilton County, Nebraska. She died in June 2017 at age 85. Her will, executed in June 2011, was admitted to probate in January 2018, and Ronald E. Akerson (Ronald), the nephew of Akerson's late husband, was appointed personal representative for the estate. The residuary of Akerson's estate was divided one half to Ronald and one half to various other relatives. The relevant article of Akerson's will stated:

> I give the sum of Eight Hundred Seventy-five Thousand and no/100 Dollars ($875,000.00) to HAMILTON MANOR, Aurora, Nebraska, for its unrestricted use, as determined by its Board of Directors.
>
> The charitable bequests in this paragraph shall bear no portion of the costs of administration nor estate or inheritance tax.

Hamilton Manor was a nursing home facility in Aurora, Nebraska, owned by Hamilton County and operated through the Hamilton Manor Board of Trustees (board of trustees), under Neb. Rev. Stat. § 23-3501 et seq. (Reissue 2012 & Cum. Supp. 2020). In 1963, the voters of Hamilton County approved a bond issue for the construction of the nursing home. The facility opened in 1965. According to an affidavit submitted by Ronald, Akerson wanted to gift money to Hamilton Manor, because she appreciated the rehabilitation services she and her sister received there.

In 2009, Hamilton Manor experienced financial difficulties. The board of trustees explored the possibility of changing Hamilton Manor's operating structure to a "501(c)(3) nonprofit" corporation in an effort to raise additional funds for the facility. In August 2009, articles of incorporation for an entity named "Hamilton Manor Rehabilitation & Care Center" (the corporation) were filed with the Nebraska Secretary of State.

The purpose of the corporation was to "construct, maintain[,] and promote a nursing home and elderly care facility in Aurora . . . and to promote services for senior citizens in Hamilton County." The board of trustees ultimately decided not to convert Hamilton Manor to a nonprofit corporation, and as such, Hamilton Manor remained owned by Hamilton County.

Around 2012, Hamilton County began loaning money to Hamilton Manor to aid in its operation. By July 2016, Hamilton County had loaned Hamilton Manor a total of $925,500. On July 22, 2016, Hamilton County executed loan extension agreements with "Hamilton Manor Rehabilitation and Care Center," "a County owned Nursing Home Facility, located in Aurora, Hamilton County, Nebraska." Per the agreements, the loans were due on July 22, 2021.

Due to Hamilton Manor's continued financial difficulties, Hamilton County and the board of trustees sought alternative solutions. In December 2016, Hamilton County and Hamilton Manor, through its board of trustees, entered into a "Consulting and Bed Transfer Agreement" (the Agreement) with Quality Care Solutions, LLC (QCS), a Nebraska for-profit company principally located in Aurora. Under the Agreement, QCS was to construct a new nursing home in Aurora by March 1, 2018. The initial consulting phase of the project in which QCS agreed to consult with Hamilton Manor on the day-to-day operations of the facility was to continue until the new facility became operational, at which point Hamilton Manor would transfer its licenses to operate 60 nursing home beds to QCS. The Agreement stated that the board of trustees "intend[ed] to continue to operate and manage the [nursing facility] until such time as [QCS] has constructed a new 60-bed nursing home" and that "Hamilton Manor shall continue to be licensed as a nursing facility and certified for participation in the Medicare and Medicaid programs in the name of and under the authority of Hamilton Manor and the [board of trustees]." The board of trustees agreed to close its facility and cease all operations upon the opening of the new facility. Hamilton County agreed

to demolish the old nursing home building within a reasonable time following the opening of the new facility and to not operate a senior care facility on the property for 20 years. The Agreement would terminate upon mutual agreement of the parties, a material breach of the agreement by either party, or QCS' inability to obtain the necessary regulatory approval or declaration of bankruptcy.

As of June 6, 2017, Hamilton Manor continued to operate as a skilled nursing facility. Thereafter, QCS completed construction of the new facility, consistent with the March 2018 timeline provided under the Agreement. By April 2018, Hamilton County ceased operating Hamilton Manor and transferred its bed licenses to QCS. Hamilton County demolished Hamilton Manor, and on June 27, 2019, sold the real property on which Hamilton Manor sat for $275,000. The board of trustees continues to exist and operates a separate checking account in the name of Hamilton Manor for the purpose of winding up the nursing home business.

As noted, Akerson died in June 2017. Her will was admitted to probate in January 2018. In the fall of 2018, Ronald, as personal representative, recognized the $875,000 charitable bequest to Hamilton Manor in the estate's federal estate tax and Nebraska inheritance tax filings. On the federal estate tax return, Ronald asserted that there were no plans to contest or have interpreted any of the charitable devises made under the will. In the inheritance tax filing, Ronald listed Hamilton Manor as a charitable beneficiary of Akerson's estate in the amount of $875,000. But in September 2019, Ronald petitioned the probate court of Hamilton County for construction of Akerson's will, asking that the court find the charitable bequest to Hamilton Manor had failed and order the proceeds to be administered as part of the residue of the estate. Ronald's petition incorrectly stated that Hamilton Manor was a nonprofit corporation. Hamilton County and the board of trustees filed a response stating that they owned and operated Hamilton Manor and claiming that the bequest vested upon Akerson's death.

Pursuant to Neb. Rev. Stat. § 30-2342.01 (Reissue 2016), the State of Nebraska intervened on the side of Hamilton County and the board of trustees.

The matter was tried to the county court on stipulated facts. On August 14, 2020, the court issued its written order finding that the bequest to Hamilton Manor lapsed. The court found that on December 1, 2016, approximately 6 months prior to Akerson's death, Hamilton County and the board of trustees entered into the Agreement with QCS. The court found that in April 2018, Hamilton Manor ceased operating as a nursing home facility. The court found that "the bequest was not to the [c]orporation," because Akerson "did not specifically identify any corporation in the bequest to Hamilton Manor." But then, the court found that the purpose of the corporation was to "'construct, maintain and promote a nursing home and elderly care facility in Aurora, Hamilton County, Nebraska,'" and that "[w]hen the [c]orporation entered into the Agreement, that specific purpose no longer existed." The court quoted language from *In re Estate of Harrington*,[1] stating that "'the bequest at bar was in effect a gift to the objects and purposes of plaintiff corporation, and not to the corporation itself.'" The court found that "prior to [Akerson's] death, Hamilton Manor ceased to exist." The court ordered the $875,000 to be distributed to Akerson's heirs in accordance with the will's residuary clause.

Hamilton County and the board of trustees filed this timely appeal. We moved this case to our docket on our motion.

ASSIGNMENTS OF ERROR

Hamilton County and the board of trustees assign, restated, that the probate court erred in (1) finding that the bequest lapsed when Hamilton Manor was operating on the date of death, although there was an agreement in place under which the facility would close at a future date; (2) distributing the

---

[1] *In re Estate of Harrington*, 151 Neb. 81, 36 N.W.2d 577 (1949).

bequest under the will's residuary clause, in contravention of § 30-2342.01; and (3) failing to distribute the bequest to Hamilton County and the board of trustees with interest under Neb. Rev. Stat. § 30-24,102 (Reissue 2016).

## STANDARD OF REVIEW

[1,2] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3,4] The interpretation of the words in a will or a trust presents a question of law.[4] When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[5]

[5] The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.[6]

## ANALYSIS

### Devise Did Not Lapse

The issues for disposition are whether the probate court erred in finding that the charitable bequest to Hamilton Manor lapsed and, if so, whether Hamilton County and the board of trustees, as the political subdivisions that own and operate Hamilton Manor, are entitled to interest.

Initially, we note that Akerson's will bequeathed the monies to "HAMILTON MANOR . . . for its unrestricted use, as determined by its Board of Directors." However, the record is clear

---

[2] *In re Estate of Barger*, 303 Neb. 817, 931 N.W.2d 660 (2019).

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*.

that Hamilton Manor is operated by a board of trustees as is required by statute. Despite this misnomer, none of the parties dispute that Hamilton Manor is the beneficiary identified by Akerson under the relevant will provision. Additionally, though the probate court indicated in its order that the corporation entered into the Agreement with QCS, the record clearly shows that Hamilton Manor through its board of trustees was party to the Agreement, and not the corporation.

The predominating issue for resolution is whether the Agreement caused the bequest to Hamilton Manor to lapse prior to Akerson's death. If a beneficiary organization has ceased to exist at the time the will goes into effect, the legacy lapses.[7]

Hamilton County and the board of trustees argue that because Hamilton Manor was actively operating as a nursing home on the date of Akerson's death, the devise vested on that date, and that such vesting was not invalidated by the terms of the Agreement that Hamilton Manor would close at a future date. The State agrees with Hamilton County and the board of trustees and argues that pursuant to the provisions of Akerson's will, Akerson intended Hamilton Manor, by and through Hamilton County and the board of trustees, to receive the $875,000. Hamilton County, the board of trustees, and the State argued in the alternative that if the bequest did lapse, then the court should apply the doctrine of cy pres and award the funds to a similar charity in Hamilton County rather than to Akerson's heirs.

Ronald argues that the court correctly found that the Agreement rendered the bequest to Hamilton Manor ineffectual. Ronald contends that on the date of Akerson's death, Hamilton Manor was no longer carrying out the charitable objectives and purposes for which the bequest was given, and that the bequest's failure is akin to the failure of a condition subsequent.

---

[7] *In re Estate of Joseph*, 62 N.Y.S.2d 197 (1946); *In re Matter of Walker*, 185 Misc. 1046, 53 N.Y.S.2d 106 (1944).

[6-8] Resolution of this matter is dictated by the intent of Akerson under her will, as well as provisions of the Nebraska Probate Code.[8] The cardinal rule in construing a will is to ascertain and effectuate the testator's intent if such intent is not contrary to the law.[9] Section 30-2341 states: "The intention of a testator as expressed in [her] will controls the legal effect of [her] dispositions." To arrive at a testator's or testatrix's intention expressed in a will, a court must examine the will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meanings of words used in the will, and assume that the maker of the will understood words stated in the will.[10] Courts will view with favor donations by will for charitable purposes, and will endeavor to carry them into effect, where the same can be done consistently with the rules of law.[11]

Initially, we establish that Akerson's will created a gift, or devise, to Hamilton Manor that is charitable in nature. Under the relevant provision, Akerson gave $875,000 to Hamilton Manor, "for its unrestricted use." Immediately thereafter, Akerson referred to the devise to Hamilton Manor, and other devises contained in the same article, as "charitable bequests." Additionally, under Nebraska law, nonprofit nursing homes are classified as charitable institutions.[12] Thus, Akerson intended to leave $875,000 to Hamilton Manor as a charitable gift.

---

[8] Neb. Rev. Stat. §§ 30-401 to 30-406, 30-701 to 30-713, 30-2201 to 30-2902, 30-3901 to 30-3923, 30-4001 to 30-4045, and 30-4201 to 30-4210 (Reissue 2016 & Cum. Supp. 2020).

[9] *In re Estate of Barger, supra* note 2; *In re Estate of Johnson*, 260 Neb. 91, 615 N.W.2d 98 (2000).

[10] *Id.*

[11] *Allebach v. City of Friend*, 118 Neb. 781, 226 N.W. 440 (1929); *Gould v. Board of Home Missions*, 102 Neb. 526, 167 N.W. 776 (1918); *St. James Orphan Asylum v. Shelby*, 60 Neb. 796, 84 N.W. 273 (1900). See *Garwood v. Drake University*, 188 Neb. 605, 198 N.W.2d 336 (1972).

[12] *Bethesda Foundation v. County of Saunders*, 200 Neb. 574, 264 N.W.2d 664 (1978); *Evangelical Lutheran Good Samaritan Soc. v. County of Gage*, 181 Neb. 831, 151 N.W.2d 446 (1967).

We next determine whether the charitable gift lapsed. The undisputed timeline is that Hamilton County and the board of trustees entered into the Agreement on December 1, 2016. The Agreement provided for consultation services, the construction of a new nursing facility, and the closing of Hamilton Manor, all by March 2018. Akerson died on June 6, 2017. The Agreement came to fruition in April 2018, at which time Hamilton Manor closed and transferred its bed licenses to QCS. Under this set of facts, in accordance with well-settled Nebraska law, we conclude that Akerson's gift to Hamilton Manor vested on the date of her death.

[9-11] In Nebraska, title to both real and personal property passes immediately upon death to the decedent's devisees or heirs, subject to administration, allowances, and a surviving spouse's elective share.[13] The provisions of a will take effect and become operative at the time of the death of the testator, unless the will expressly provides for vesting at a later time.[14]

> "'[T]he prevailing rule is that the fact that a [charitable] organization named as a beneficiary in a will discontinues its active functions after the execution of the will does not impair its right to take the gift so long as its identity, whether corporate or associative, continues without dissolution until the death of the testator.'"[15]

A will always speaks from the date of the testator's death, because the testator could always modify the distributions prior to his or her death.[16]

---

[13] § 30-2401; *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010).

[14] See, *In re Estate of Barger, supra* note 2; *Carr v. Carr*, 173 Neb. 189, 112 N.W.2d 786 (1962); *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153 (2016).

[15] *In re Estate of Lind*, 314 Ill. App. 3d 1055, 1058, 734 N.E.2d 47, 49, 248 Ill. Dec. 339, 341 (2000). See, also, *In re Boston Regional Medical Center, Inc.*, 410 F.3d 100 (2005) (applying Massachusetts law); *In re Estate of MacPherson*, 14 Cal. App. 3d 450, 92 Cal. Rptr. 574 (1970); *Old Colony Trust Co. v. Winchester Home*, 324 Mass. 258, 85 N.E.2d 622 (1949).

[16] *In re Estate of Barger, supra* note 2.

At the time of Akerson's death, Hamilton Manor still oper-ated as a skilled nursing facility and was capable of receiving the gift. Section 23-3504(2) states that a board of trustees appointed by a county board "[m]ay accept property by gift, devise, bequest, or otherwise and may carry out any condi-tions connected to the receipt of any gift, devise, or bequest." However, the fact that Hamilton Manor was capable of receiv-ing the gift does not end our analysis. An organization must also be capable of using the charitable gift for its intended purpose and be willing to do so.[17]

The language used by Akerson in her will leads us to con-clude that she made the gift with a general charitable purpose to benefit Hamilton Manor. In ascertaining Akerson's intent, we note that Akerson gifted Hamilton Manor the funds "for its unrestricted use, as determined by its [board of trustees]." In doing so, Akerson used no words of qualification or limita-tion, nor did she provide for an alternative disposition of the gift should Hamilton Manor cease to exist. These absences qualify as evidence of a general charitable intent.[18] Further, the Restatement (Third) of Trusts states that charitable purposes include the promotion of health, governmental or municipal purposes, and other purposes that are beneficial to the commu-nity.[19] Nonprofit nursing homes and hospitals classify as chari-table institutions.[20] Therefore, so long as Hamilton Manor was willing and able, at the time of Akerson's death, to use the char-itable gift for the general promotion of health and governmental services in Hamilton County, then the gift would not lapse.

Here, as of the date of Akerson's death, even though Hamilton Manor was scheduled to close approximately 9 months later, it is uncontested that Hamilton Manor still provided the services

---

[17] *In re Boston Regional Medical Center, Inc., supra* note 15.

[18] *Wood v. Lincoln General Hospital Assn.*, 205 Neb. 576, 288 N.W.2d 735 (1980).

[19] Restatement (Third) of Trusts § 28 (2003).

[20] See, *Bethesda Foundation, supra* note 12; *Evangelical Lutheran Good Samaritan Soc., supra* note 12; *Allebach, supra* note 11.

of a skilled nursing facility. As such, the Agreement did not prevent Hamilton Manor from carrying out the general charitable objectives and purposes of the gift. As Hamilton County and the board of trustees point out, the Agreement established that Hamilton Manor intended to continue its normal operations until construction of a new 60-bed nursing facility was completed. The Agreement contemplated the possibility that construction of the new facility could not be completed and that the Agreement could be terminated.

Even if we assume for purposes of argument that termination was unlikely, and the facts regarding the Agreement supported the probate court's conclusion that the charitable purposes of the gift became impossible to achieve, the Legislature has determined that a charitable gift will not fail under such circumstances. Section 30-2342.01(a) states that "no gift, devise . . . for . . . charitable, or benevolent purposes, which in other respects is valid under the laws of this state, shall be invalid or fail . . . by reason that it is . . . impossible to achieve." In the words of § 30-2342.01(b), this court should "determine and order an administration or distribution of the gift [or] devise . . . in a manner as consistent as possible with the intent expressed in the document creating the gift [or] devise."

> "Legacies and devises to the uses of charity are entitled to peculiar favor and are regarded as privileged testaments, and will not be declared void if they can by any possibility, consistent with law, be considered as good. So courts of equity go to the length of their judicial power rather than that such a trust should fail."[21]

Favorably viewing Akerson's charitable gift and endeavoring to carry it into effect, we conclude that under the undisputed facts, the gift did not fail, nor did it become impossible to execute in strict accordance with the charitable purposes and objectives of Akerson's will.[22]

---

[21] *Allebach, supra* note 11, 118 Neb. at 787, 226 N.W. at 442.

[22] See *Wood, supra* note 18, citing *Trustees of Dartmouth College v. Quincy*, 357 Mass. 521, 258 N.E.2d 745 (1970). See, also, *Garwood, supra* note 11.

In finding that the gift lapsed, the probate court relied upon *In re Estate of Harrington*,[23] but the case is distinguishable due to the language used in that will. In that case, the question before the court was whether a seminary was in existence on the date of the death of the testatrix within the meaning of the provisions of her will. In the part of the will in controversy, the testator devised property to the seminary "'if in existence; but if not in existence at the death of the survivor of said testators,'" then to a church.[24] The seminary discontinued all theological education 3 years prior to the testatrix's death, but remained an existing legal entity at the time of her death. The court held that the seminary was nonfunctioning at the time of the testatrix's death and could not carry out the objects and purposes of the gift. But the court stated that the issue was not whether the gift had lapsed, because the testatrix provided for a contingency by giving the gift to a church.

In the present case, there is no language in Akerson's will requiring that Hamilton Manor still be in existence at the time of her death. Even if there were such a provision, it would be satisfied because Hamilton Manor was in existence and operational on the date of Akerson's death. Further, the recipients of the gift are "political subdivision[s] of the state of Nebraska, and the end of [their] existence cannot be safely asserted or even foreseen."[25] Therefore, we disagree with the probate court's conclusion that Hamilton Manor ceased to exist as of Akerson's death. In fact, Hamilton Manor, as Akerson knew it, did exist at her death. And the board of trustees still maintains an active account for Hamilton Manor.

Ronald argues that the closing of Hamilton Manor a short time after Akerson's death is similar to a breach of a condition subsequent, which was an argument at issue in *Allebach v. City of Friend*.[26] However, Ronald's argument is inapplicable

---

[23] *In re Estate of Harrington, supra* note 1.

[24] *Id.* at 91, 36 N.W.2d at 582.

[25] *Allebach, supra* note 11, 118 Neb. at 789-90, 226 N.W. at 443.

[26] *Allebach, supra* note 11.

based on the language of the will at issue in *Allebach*. In that case, the testator gifted $10,000 to the city of Friend "'to be used for the erection of a hospital.'"[27] The money was placed in a separate fund and was not used for the erection of a hospital within 4 years of receipt. The residuary beneficiary filed a petition contending that the city had forfeited the gift. In construing the will, the court found that the instruction to use the money to erect a hospital amounted to a condition subsequent, which must be carried out within a reasonable period of time. The court noted that a protracted delay in carrying out the purposes of the gift could amount to a refusal and cause the gift to revert. Ultimately, the court affirmed dismissal of the petition, finding that consummation of the purpose of the gift had not been delayed for an unreasonable amount of time.

In the present case, however, Akerson's gift to Hamilton Manor was unconditional, save for the requirement that the money be used for the facility's general charitable purposes. The Agreement did not make it impossible for Hamilton Manor to carry out Akerson's intent. Therefore, there is merit to Hamilton County and the board of trustees' argument that the probate court erred in finding that the gift to Hamilton Manor lapsed. Because the gift can be carried out in accordance with Akerson's intent, we do not need to consider the application of the doctrine of cy pres.[28]

## Interest

[12,13] Section 30-24,102 provides that general pecuniary devises bear interest at the legal rate beginning 1 year after the first appointment of a personal representative until payment, unless a contrary intent is indicated by the will. A will is an instrument in writing. Therefore, when interest is required to be paid on a pecuniary devise pursuant to this section, the legal rate of interest called for is 12 percent per annum, as required

---

[27] *Id.* at 783, 226 N.W. at 440.

[28] See *Allebach, supra* note 11.

by Neb. Rev. Stat. § 45-104 (Reissue 2010).[29] In this case, Ronald was appointed personal representative on January 5, 2018. As personal representative, Ronald recognized Hamilton Manor as a charitable beneficiary in the estate's federal estate tax and Nebraska inheritance tax filings in the fall of 2018. The bequest to Hamilton Manor began bearing interest on January 5, 2019. Ronald filed a petition for construction of will on September 27, 2019.

Ronald argues that a beneficiary's right to interest is qualified. We have stated that charging a personal representative with interest would be inequitable when the delay in payment is caused by a will contest or through other litigation which prevents speedy distribution of the estate.[30] A personal representative is not ordinarily chargeable with interest, at least until a reasonable time has elapsed after the will contest or other litigation has been completed.[31] Hamilton County and the board of trustees argue that this exception is judicially created. However, they have not asked this court to overrule any precedent.

We agree with Hamilton County and the board of trustees that pursuant to the ordinary operation of § 30-24,102, an award of interest is appropriate in this case. The only evidence of delay in our record was caused by Ronald's petition for construction of the will. Ronald had previously asserted in tax filings that the charitable bequest to Hamilton Manor would be unchallenged. In his petition, Ronald requested the court to find that the distribution to Hamilton Manor had failed and to order that the proceeds be administered as part of the residuary of the estate, of which Ronald held a one-half interest. Ronald alleged that this would be most consistent with Akerson's intent, even though it is clear that Akerson intended to make this gift to charity and did not provide a provision for

---

[29] *In re Estate of Peterson*, 230 Neb. 744, 433 N.W.2d 500 (1988).

[30] *In re Estate of Kierstead*, 128 Neb. 654, 259 N.W. 740 (1935).

[31] *In re Estate of Miller*, 231 Neb. 723, 437 N.W.2d 793 (1989).

an alternative disposition. Furthermore, we are observant of the provision in Akerson's will in which she stated that she did not desire "any person whomsoever" to "in any way, directly or indirectly, [to] contest . . . the distribution of my estate for any reason." Therefore, even if Ronald's contention that the gift had lapsed was of pure intent, the law and the facts direct us to hold Ronald responsible to Hamilton County and the board of trustees for interest.

## CONCLUSION

For the foregoing reasons, the decision of the probate court should be and is hereby reversed and the cause is remanded with direction to order that Akerson's $875,000 charitable bequest be distributed to Hamilton County and the board of trustees, with interest accruing at 12 percent per annum commencing January 5, 2019.

Reversed and remanded with direction.

Miller-Lerman, J., participating on briefs.

Papik, J., not participating.